# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
COOK, TELLITOCCI, and HAIGHT
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Staff Sergeant JEFFERY G. BARNES, JR.**
**United States Army, Appellant**

ARMY 20120308

Headquarters, Fort Stewart
Tiernan P. Dolan, Military Judge
Colonel Randall J. Bagwell, Staff Judge Advocate

For Appellant:  Captain Patrick A. Crocker, JA (argued); Colonel Kevin Boyle, JA; Lieutenant Colonel Peter Kageleiry, Jr., JA; Captain Patrick A. Crocker, JA (on brief).

For Appellee:  Captain Carling M. Dunham, JA (argued); Major John K. Choike, JA; Captain Benjamin W. Hogan, JA; Captain Carling M. Dunham, JA (on brief).

8 May 2015

------------------------------------
OPINION OF THE COURT
------------------------------------

TELLITOCCI, Judge:

A panel composed of officer and enlisted members sitting as a general court-martial convicted appellant, contrary to his pleas, of two specifications of rape in violation of Article 120, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 920 (2000 & Supp. V; 2006 & Supp. I).  The panel sentenced appellant to a dishonorable discharge, confinement for fifteen years, forfeiture of all pay and allowances, and reduction to the grade of E-1.  The convening authority approved only so much of the sentence as provides for a dishonorable discharge, confinement for fourteen years and nine months, forfeiture of all pay and allowances, and reduction to the grade of E-1.

BARNES—ARMY 20120308

This case is before us for review pursuant to Article 66, UCMJ. Appellant raises two assignments of error, one of which warrants discussion but no relief.[1]

Appellant alleges, in pertinent part:

> THE MILITARY JUDGE ABUSED HIS DISCRETION BY GIVING A MILITARY RULE OF EVIDENCE 413 MERITS INSTRUCTION TO THE PANEL BECAUSE NO EVIDENCE HAD BEEN ADMITTED BY THE MILITARY JUDGE FOR 413 PURPOSES.

## BACKGROUND

Appellant was charged with raping two separate victims, one in 2006 and one in 2009.

During a pretrial motions session pursuant to Article 39(a), UCMJ, the military judge and the parties discussed a defense motion to exclude evidence of uncharged misconduct concerning a sexual assault offense alleged to have been committed by appellant as a juvenile. The parties discussed the application of Military Rule of Evidence [hereinafter Mil. R. Evid.] 413. During this session, the parties and the military judge briefly discussed the factors set forth in *United States v. Wright*, 53 M.J. 476 (C.A.A.F. 2000), as well as the balancing test of Mil. R. Evid. 403 as discussed in *United States v. Berry*, 61 M.J. 91 (C.A.A.F. 2005). The military judge ruled that the alleged juvenile misconduct would not be relevant unless the defense opened the door by presenting a claim that the appellant "had never been accused of such crimes before."

After this dialogue, the military judge discussed a possibility raised by the government that they may, at closing, argue Mil. R. Evid. 413 "propensity" based upon the two acts of charged misconduct themselves. Once the military judge determined that the possibility of any propensity argument would not occur until closing, the parties agreed that it was an instructional issue, and the military judge directed that it be taken up after the merits evidence had been presented. Neither party objected to this course of action.

---

[1] Appellant also personally raises matters pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), none of which merits discussion or relief.

2

*2006 Incident*

The first specification alleged that, in July of 2006, appellant raped a fellow soldier, KAS. During this time, appellant was on temporary duty (TDY) at Fort Huachuca, Arizona for training. After an evening spent drinking together at multiple bars, because they were all too intoxicated to drive anywhere, appellant invited KAS and her female friend BH back to his hotel room. The female soldiers decided to spend the night sleeping in the living room of appellant's hotel suite on the pull-out sofa. Appellant's bed was in a separate room with its own door. At some time during the night, KAS woke up to a sensation which she described as a very sharp pain of a non-lubricated penis in her vagina. She testified that she tried to push the person off and told him to stop and shortly thereafter the person stopped. She quickly fell back asleep. KAS woke up with her pants around her ankles. That morning KAS reported the rape to her military leadership and local civilian law enforcement. She was unable to identify her assailant, but testing of vaginal swabs from KAS revealed the presence of DNA belonging to appellant.

Appellant testified he could not recall any events after he went to bed that night.

*2009 Incident*

The second specification alleged that in January of 2009, appellant raped a civilian, NB, while appellant was once again TDY at Fort Huachuca for training. NB testified that she met appellant while sharing a cab with him, and she then accompanied appellant and a fellow soldier, Staff Sergeant (SSG) RS, to a karaoke club in town. After an evening of drinking, the three proceeded back to appellant's room in the on-post guest house. The three continued drinking in appellant's room. At some point that night, appellant and NB engaged in consensual kissing while on the balcony for a cigarette. Later, NB and SSG RS left appellant's room to take a cab back to town. Once the two of them were about to get into the cab, NB told RS she had left her purse upstairs and that he should leave and she would take a separate cab after retrieving her purse. NB admitted that this was a subterfuge concocted by she and appellant to ensure that SSG RS left the area so that NB could return to appellant's room to engage in consensual sexual activity with him.

Upon her return to the room, appellant and NB engaged in consensual sexual activities. NB testified that, initially, appellant wore a condom as they engaged in consensual sexual intercourse. Then, appellant withdrew his penis and started to perform oral sex on her. When appellant subsequently asked NB to reciprocate, she refused, whereupon appellant re-engaged with vaginal intercourse. NB complained that appellant had removed the condom and that he should stop. She testified that she repeatedly told him to stop and attempted to push him off, but appellant refused. She further testified appellant grabbed her by the back of the neck and ponytail and

held her down until he finished, then apologized because he "just wanted her so bad." NB departed appellant's room and was picked up shortly thereafter by a military policeman (MP) after she was observed walking down the road toward the installation exit. The MP described her as crying and hysterical. She was transported to the military police station where she subsequently reported the rape.

Appellant's testimony comports with that of NB until just after the point when NB declined to reciprocate oral sex. Appellant testified that he put on another condom and the subsequent intercourse was consensual. He further testified that shortly thereafter they parted amicably with no indications of any distress.

*Propensity Instructions*

At the conclusion of the merits portion of the trial, the military judge discussed his proposed instructions with counsel and appellant. Defense counsel objected to the military judge's proposal to give the "Other Crimes, Wrongs or Acts Evidence" instruction from the Military Judges' Benchbook. Dep't of Army, Pam. 27-9, Legal Services: Military Judges' Benchbook [hereinafter Benchbook], para. 7-13-1, n.4 (1 Jan. 2010). The defense objected to the form of the instruction generally and requested instead the standard "anti-spillover" instruction from paragraph 7-17 of the Benchbook. The military judge stated:

> Your objection to note 4 is overruled. 413 [Mil. R. Evid.] is what it is. While it is contrary to the spillover instruction and common law jurisprudence, in that 413 evidence allows for propensity evidence thus note 4 is going to be given. It contains within it a spillover like instruction and caveats that with the notion of propensity evidence. So your objection is overruled. I'm not going to give the spillover instruction because it contradicts that which the panel members may do under 413.

The record does not demonstrate that the military judge conducted an application of the *Wright* factors, nor does it reflect that he performed a Mil. R. Evid. 401 relevance test or a Mil. R. Evid. 403 balancing test.

The military judge instructed the members in accordance with the Benchbook:

> Evidence that the accused committed the sexual assault alleged in each specification and charge may have no bearing on your deliberations in relation to the other specifications and charge, unless you first determine, by a preponderance of the evidence that it is more likely than not the offense alleged in one of these specifications

4

occurred.  For example, if you determine by a preponderance of the evidence, the offense alleged in one of the specifications occurred, even if you were not convinced beyond a reasonable doubt that the accused is guilty of that offense, you may nonetheless then consider the evidence of that offense for its bearing on any matter to which it is relevant in relation to the other charge.  You may also consider the evidence of such other acts of sexual assault for its tendency, if any, to show the accused's propensity or predisposition to engage in sexual assault.  You may not, however, convict the accused solely because you believe he committed this other offense or solely because you believe the accused has a propensity or predisposition to engage in sexual assault. In other words, you cannot use this evidence to overcome a failure of proof in the government's case, if you perceive any to exist.  The accused may be convicted of an alleged offense only if the prosecution has proven each element beyond a reasonable doubt.  Each offense must stand on its own and proof of one offense carries no inference that the accused is guilty of any other offense.  In other words, proof of one sexual assault creates no inference that the accused is guilty of another sexual assault.  However, it may demonstrate that the accused has a propensity to commit that type of offense.  The prosecution's burden of proof to establish the accused's guilt beyond a reasonable doubt remains as to each and every element of each offense charged.  Proof of one charged offense carries with it no inference that the accused is guilty of any other charged offense.

Government counsel argued during closing, in pertinent part:

[L]ighting does strike twice and the accused is proof positive of it. . . . The accused struck again in 2009.  It even started out in the same place, Fort Huachuca, Arizona, the accused is TDY.  He had gotten away with it the first time.  No charges have been pressed yet. So he thought, "hey this is a pretty good gig.  I can go have sex whenever I want.  Take it from an unsuspecting woman.  They didn't catch me three years ago."

5

In their closing, the defense reiterated the military judge's instruction that "each offense must stand on its own and proof of one offense carries no inference that the accused is guilty of the other offense."

In rebuttal, government counsel expressly referred to propensity:

> I ask that you pay careful attention to all of the instructions in their entirety, not just certain portions of them, and know that the accused's propensity to commit these offenses can be evaluated if you find he has at least committed the offense by [a] preponderance of the evidence standard. . . . The defense would like you to believe that the rape in 2009 and the rape in 2006 were so different, but yet, they are so similar. Each time the accused took what he wanted, when he wanted, without the consent of the other parties, of the victim. Each time. They are actually very similar.

## LAW

Military Rule of Evidence 413 is entitled "Evidence of similar crimes in sexual assault cases" and provides:

> In a court-martial in which the accused is charged with an offense of sexual assault, evidence of the accused's commission of one or more offenses of sexual assault is admissible and may be considered for its bearing on any manner to which it is relevant.

An accused may not be convicted based upon a general criminal disposition. *United States v. Hogan*, 20 M.J. 71, 73 (C.M.A. 1985). The government may not introduce similarities between a charged offense and prior conduct, whether charged or uncharged, without using a specific exception within our rules of evidence, such as Mil. R. Evid. 404 or 413. *Wright*, 53 M.J. at 480. In this case, Mil. R. Evid. 404 is not applicable, but Mil. R. Evid. 413 is directly pertinent.

The history of Mil. R. Evid. 413[2] was succinctly discussed by our superior court in *Id*. at 480-81. It is clear that Mil. R. Evid. 413 was intended to be a significant change from historical practices by creating an exception to Rule 404(b)'s general prohibition against propensity evidence by specifically allowing the

---

[2] Military Rule of Evidence 413 is virtually identical to Federal Rule of Evidence 413.

use of a defendant's propensity to commit sexual offenses for its bearing "on any matter to which it is relevant." Mil. R. Evid. 413(a). "[I]nherent in [Mil. R. Evid.] 413 is a general presumption in favor of admission." *Berry*, 61 M.J. at 94-95; *see also Wright*, 53 M.J. at 482-83.

It is, however, "a constitutional requirement that evidence offered under [Mil. R. Evid.] 413 be subjected to a thorough balancing test" under Mil. R. Evid. 403. *United States v. Dewrell*, 55 M.J. 131, 138 (C.A.A.F. 2001). In this context, the Mil. R. Evid. 403 balancing test "should be applied in light of a strong legislative judgment that evidence of prior sexual offenses should ordinarily be admissible." *United States v. Solomon*, 72 M.J. 176, 180 (C.A.A.F. 2013) (citation and internal quotation marks omitted).

In most reported cases, Mil. R. Evid. 413 is used by the prosecution to introduce evidence of **uncharged** misconduct in an attempt to establish the accused's propensity to commit sexual assaults. In such a case, prior to the admission of evidence of such misconduct, the military judge is required to analyze the proposed evidence for relevance and probative value. In *Wright*, the Court of Appeals for the Armed Forced (C.A.A.F.) summarized and referenced numerous federal cases on this point. 53 M.J. at 482. In addition, the *Wright* court listed three threshold findings required before evidence is admitted under Mil. R. Evid. 413: "1) the accused [is] charged with an offense of sexual assault; 2) the proffered evidence [is] evidence of the accused's commission of another sexual assault; and 3) the evidence is relevant under [Mil. R. Evid.] 401 and [Mil. R. Evid.] 402." *Solomon*, 72 M.J. at 179 (citing *Berry*, 61 M.J. at 95; *Wright*, 53 M.J. at 482). *Id*. After this threshold finding, the trial court must then apply a balancing test under Mil. R. Evid. 403. *Id*. at 179-80. The court in *Wright* listed multiple, non-exhaustive factors for trial courts to consider in performing the Mil. R. Evid. 403 balancing test.[3] *Wright*, 53 M.J. at 482.

---

[3] The nine factors are:

> the strength of the proof of the prior act; the probative weight of the evidence; the potential to present less prejudicial evidence; the possible distraction of the fact
>
> finder; the time needed to prove the prior conduct; the temporal proximity of the prior event; the frequency of the acts; the presence of any intervening circumstances; and the relationship between the parties.

*Berry*, 61 M.J. at 95 (citing *Wright*, 53 M.J. at 482).

Once evidence is admitted pursuant to Mil. R. Evid. 413, the panel members must be given appropriate instructions.  In *United States v. Dacosta*, this court placed a duty on military judges to provide specific guidance to panel members:

> You have heard evidence concerning allegations that the accused may have committed (another) (other) uncharged offense(s) of sexual assault.  The accused is not charged with (this) (these) other offense(s) involving (this) (these) individual(s).  This evidence should have no bearing on your deliberations unless you determine (this) (these) event(s) occurred.  If you determine by a preponderance of the evidence that the other uncharged offense(s) occurred, you may consider the evidence for its bearing on any matter to which it is relevant in relation to the charged offense(s).  (It has no bearing on any of the other offenses charged.)
>
> You may not, however, convict the accused solely because you believe (he) (she) committed (this) (these) other offense(s) (or solely because you believe the accused has a propensity to engage in sexual assault.)
>
> You may not use this evidence as a substitute for evidence that the accused actually committed the crimes for which (he) (she) stands charged.  In other words, you cannot use this evidence to overcome a failure of proof in the government's case, if you perceive any to exist, as the accused may be convicted of an offense only if you are satisfied the government has proven every element of each charged offense beyond a reasonable doubt.
>
> Each offense must stand on its own and you must keep the evidence of each offense separate.  The burden is on the prosecution to prove the accused's guilt beyond a reasonable doubt as to each and every element of (each) (the) offense(s) charged.

63 M.J. 575, 584-85 (Army Ct. Crim. App. 2006).

In the instant case, no evidence of uncharged misconduct was admitted.  To the contrary, the only admitted evidence of sexual assault offenses committed by appellant was directly related to one or the other of the charged rapes.  *See United States v. Schroder*, 65 M.J. 49, 52 (C.A.A.F. 2007) (evidence of both charged and uncharged sexual misconduct used as other acts evidence to prove charged offenses).  We find no prohibition against or reason to preclude the use of evidence of similar crimes in sexual assault cases in accordance with Mil. R. Evid. 413 due to the fact

that the "similar crime" is also a charged offense. We note that the instruction proposed by this court in *Dacosta* does not make mention of inferences— permissible, impermissible, rebuttable, or otherwise. 63 M.J. at 584-85. Nonetheless, the above *Dacosta* instruction is still demonstrative of the protections required when "propensity" is put before the members.

We review a military judge's non-mandatory panel instruction for an abuse of discretion. *United States v. Forbes*, 61 M.J. 354, 358 (C.A.A.F. 2005). In evaluating non-constitutional error, we must determine whether the instructional error had "substantial influence" on the findings. *United States v. Gibson*, 58 M.J. 1, 7 (C.A.A.F. 2003) (internal quotation marks omitted) (citing *Kotteakos v. United States*, 328 U.S. 750, 765 (1946)). However, if we find error such that it rises to a constitutional dimension, we may only affirm the affected findings of guilty if we determine the error was harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 24 (1967); *United States v. Kreutzer*, 61 M.J. 293, 298-99 (C.A.A.F. 2005). To find instructional error of a constitutional dimension, our court would have to find "'a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Boyde v. California*, 494 U.S. 370, 380 (1990)).

## DISCUSSION

The question becomes: is this a Mil. R. Evid. 413 case? When faced with a similar situation, the C.A.A.F., in *United States v. Burton*, determined that it was not. 67 M.J. 150, 153 (C.A.A.F. 2009).[4]

In *Burton*, appellant was charged with and convicted of two distinct incidents separated by several years. *Id.* at 151-52. However, there was no indication of any kind that the military judge or the parties understood, considered, or were attempting to apply Mil. R. Evid. 413 in any way. *Id.* at 152-53. Nevertheless, at trial during its closing, the government argued that the panel "could compare the similarities between charged sexual offenses for a propensity to commit 'these type of offenses . . . .'" *Id.* at 151. The military judge did not give an instruction regarding the use of propensity evidence but did give the standard spillover instruction found in paragraph 7-17 of the Benchbook. On appeal, the Air Force Court of Criminal Appeals determined that since the evidence of appellant's offenses *could* have been admitted as propensity evidence, allowing trial counsel's argument was not plain error. *United States v. Burton*, ACM 36296, 2007 CCA LEXIS 281 (A.F. Ct. Crim. App. 16 Jul. 2007). The C.A.A.F. specifically found:

---

[4] But they did so only after reiterating an important caveat: the government may not show propensity, via uncharged or *charged* misconduct, without first using a specific exception such as Mil. R. Evid. 404 or 413. *Burton*, 67 M.J. at 152-53.

> The problem with the CCA's holding is simple—this is not an M.R.E. 413 case. The evidence on which trial counsel was commenting was the primary proof of the charged offenses. No evidence was introduced as propensity evidence pursuant to M.R.E. 413, and none of the procedural safeguards required as a predicate to such introduction were followed. It was trial counsel's improper argument that introduced the issue of propensity, not the evidence. As the government did not offer the evidence under M.R.E. 413, it did not follow the steps required by M.R.E. 413. Therefore, it may not *a posteriori* justify its closing argument based on what it might have done.

*Burton*, 67 M.J. at 153 (internal citations omitted).

Here, as in *Burton*, there was no evidence admitted pursuant to Mil. R. Evid. 413. The military judge did not conduct any Mil. R. Evid. 401 or 402 analysis, or a 403 balancing test on the record. Unlike in *Burton*, however, here the propensity issue was not belatedly raised by government counsel during closing argument. Rather, propensity was first raised by the government during an Article 39(a), UCMJ, session when the government expressed a desire to argue it during their closing. Then, during the instructions discussion with the parties, the military judge discussed the purpose behind Mil. R. Evid. 413 with the parties and determined that it was proper to give the instruction from the Benchbook with respect to the charged sexual offenses.

Propensity was first raised to the panel members by the military judge when he furnished them with an instruction that provided guidance regarding the use of propensity and inferences that may be drawn. This instruction was given to the panel members prior to argument by counsel. Application of Mil. R. Evid. 413 here is not a post hoc attempt to rationalize trial counsel's argument. As it is clear that the military judge and the parties understood that Mil. R. Evid. 413 and propensity evidence were at issue – unlike *Burton* – this *is indeed* a Mil. R. Evid. 413 case.

The government's propensity argument was a permissible use of Mil. R. Evid. 413's exception allowing evidence of similar crimes in sexual assault cases. The error here is that the military judge did not make the predicate findings on the record regarding the permissibility of any inference of propensity to be drawn from evidence that was also properly admitted as proof of charged misconduct.

In a more routine Mil. R. Evid. 413 case, the military judge is required to make findings before evidence of uncharged misconduct is admitted. When evidence

of charged misconduct is to be argued for its tendency, if any, to show propensity, the military judge should make similar findings allowing a propensity argument by counsel prior to providing an instruction. Based on the government's initial intent to argue propensity, the military judge should have made specific findings regarding not the initial admissibility of the evidence, but the use of evidence already properly admitted, and its relevance to the other charged sexual assault.

When a military judge is required to conduct a balancing test but does not sufficiently articulate his analysis on the record, his evidentiary ruling will receive less deference on appeal. *Berry*, 61 M.J. at 96 (citing *Dewrell*, 55 M.J. at 138). In this case, the military judge evinced knowledge of the *Wright* factors, *Berry*, and Mil. R. Evid. 403, albeit earlier in the trial. As the military judge did not address his balancing test on the record, we have nothing to which we can give deference, and so, we will evaluate the use of the evidence based upon the record.

*Military Rule of Evidence 413 Threshold Factors*

Both charged offenses fall within the definition of sexual assault as defined in Mil. R. Evid. 413. *See Wright*, 53 M.J. at 482 (citing *United States v. Guardia*, 135 F.3d 1326, 1328 (10th Cir. 1998)). Further, "[t]he evidence proffered is evidence of the defendant's commission of another offense of sexual assault." *Id.* (internal quotation marks omitted). Finally, the evidence must be "relevant under Rules 401 and 402." *Id.*

Prior specific criminal acts are not traditionally prohibited because character or propensity is irrelevant; "on the contrary, it is said to weigh too much with the [finder of fact] and to so overpersuade them as to prejudge one with a bad general record and to deny him a fair opportunity to defend against a particular charge." *Michelson v. United States*, 335 U.S. 469, 475-76 (1948); *see also United States v. Enjady,* 134 F.3d 1427, 1430 (10th Cir. 1998). "Rule 413 is based upon the premise that evidence of other sexual assaults is highly relevant to prove propensity to commit like crimes, and often justifies the risk of unfair prejudice." *Enjady*, 134 F.3d at 1431 (citing 140 Cong. Rec. H8968-01, H8992 (S. Molinari, Aug. 21, 1994)). Here, appellant's propensity to commit sexual assaults is relevant under Mil. R. Evid. 401 and admissible under Mil. R. Evid. 402.

*Military Rule of Evidence 403 and The Wright Factors*

The Mil. R. Evid. 403 balancing test is the key to the admission of evidence, its constitutionality, and, as in this case, the use of properly admitted evidence to argue propensity. Some of the factors to be considered in conducting the Mil R. Evid. 403 balancing test, although not an exhaustive list, are set forth in *Wright*. 53 M.J. at 482. While we believe that this balancing depends upon the context and circumstances of each case, the factors set out by the C.A.A.F. in *Wright* are

instructive.  Three of these factors: the potential for less prejudicial evidence; the possible distraction of the fact finder; and the time needed for proof of the prior conduct, are arguably only applicable to the admission of uncharged misconduct and not particularly helpful in a case involving charged misconduct.  We will examine the remaining six factors identified in *Wright* seriatim.

### i.  Strength of the evidence of other conduct.

The evidence admitted to prove each sexual assault offense was strong and based primarily on the in-court testimony of the victims.  There was also expert testimony that appellant's DNA was found on vaginal swabs taken from the first victim.  The evidence was sufficient to support a conviction, and therefore there was certainly enough evidence for the military judge to have concluded by a preponderance of the evidence that each offense occurred.

### ii.  Probative weight.

Here, there are no uncharged sexual assault offenses to be evaluated or admitted as the C.A.A.F. did in *Berry*.  61 M.J. at 96-97.  Nonetheless, this court is of the opinion that in determining the probative weight of the respective charged offenses, the essential analysis remains the similarity of the sexual misconduct alleged by the government. *Id.*  If the offenses are too dissimilar, the probative value of any permissible inference is weakened and allowing the government to argue propensity presents too high a risk of unfair prejudice.  The two sexual assaults charged in this case are similar in many ways.  Both occurred when appellant was TDY and staying in temporary quarters.  In each case, appellant spent the evening in the company of the victim and others drinking alcoholic beverages.  The appellant invited the victims and at least one other person to his room.  Both victims were vulnerable, albeit for different reasons.  The victim in the 2006 assault was sleeping deeply after alcohol consumption.  The victim in the 2009 assault was vulnerable as she had been drinking, she was nude on the bed after having previously consented, and certainly in a position from which escape was difficult.  Finally, and perhaps most significantly, the offenses both involved the opportunistic application of physical force to overcome any verbal and physical resistance by the victims.

### iii.  Proximity in time

The incidents occurred approximately three years apart; the accused was an adult at both times.  There is no evidence and no reason to conclude that the passage of three years constituted a meaningful intervening circumstance between the two events. *See Berry*, 61 M.J. at 97.

iv.  Intervening factors

There are no other significant intervening circumstances.

v.  Frequency

The frequency of the conduct is a factor that is marginally applicable here. There were two allegations, each with a single victim.  If there were additional allegations it may make propensity evidence stronger, but two separate instances of conduct logically allow for an inference of propensity.

vi.  The relationship between the parties

The relationships between appellant and the victims are very similar: the appellant and the victim had just met that evening and had spent the evening in the company of others while drinking alcoholic beverages.

In sum, we find the similarities are such that the probative value of the propensity argument is not substantially outweighed by the danger of unfair prejudice.

*The Military Judge's Instruction*

The instruction given by the military judge was not a model of clarity.  It was, however, based directly upon the Benchbook instruction located at note 4.2 of paragraph 7-13-1.  In fact, the instruction is internally contradictory, and, as a result, it is overly protective of an accused.  Two sentences in particular go too far in limiting the use of such evidence.  The last paragraph of the instruction provides: "[i]n other words, proof of one offense carries no inference that the accused is guilty of another sexual assault;" and "[p]roof of one charged offense carries with it no inference that the accused is guilty of any other charged offense."  Benchbook, para. 7-13-1, n.4.2.

Propensity evidence is intended to allow just the opposite: it permits a fact finder to draw an inference that it is more likely the accused committed a charged sexual offense because the accused has a propensity or tendency to commit sexual assaults.  The military judge should have instructed the members using a tailored version of the instruction required by this court in *Dacosta* as discussed above.  63 M.J. at 584-85, Appendix.[5]

---

[5] In a case of multiple charged offenses where it is permissible for evidence of one to show propensity or predisposition to commit the other, and vice versa, it seems nonsensical to instruct the panel that each offense must stand completely on its own.

The remainder of the instruction does a good job of requiring the panel members to hold the prosecution to its burden on each and every element and instructs that any inference cannot be used to fill in a failure of proof on the part of the prosecution. It was similar to the standard "spillover" instruction set forth in the Benchbook at paragraph 7-17.

The fact that the military judge erroneously, in part, instructed the panel members that any propensity evidence cannot be used to support an inference of guilt defeats the purpose behind Mil R. Evid. 413. However, this error was harmless beyond a reasonable doubt as it was to the benefit of the appellant in that it prevented the panel from using any inference of his guilt based upon propensity. *See United States v. Rogers*, 587 F.3d 816, 822 (7th Cir. 2009) ("Congress has said that in a criminal trial for an offense of sexual assault, it is not improper to draw the inference that the defendant committed this sexual offense because he has the propensity to do so.").

## CONCLUSION

We find that the argument by trial counsel was not error. The military judge properly allowed trial counsel to argue propensity based upon the charged misconduct, despite the military judge's failure to conduct the appropriate balancing tests on the record. The record supports that the propensity argument was relevant and admissible, and the probative value was not substantially outweighed by the danger of unfair prejudice. Any error in the form of the instruction inured to the benefit of appellant and was, therefore, harmless beyond a reasonable doubt.

The findings of guilty and the sentence are AFFIRMED.

Senior Judge COOK and Judge HAIGHT concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

14