# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
LIND, KRAUSS, and PENLAND
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Sergeant KENDELL HILLS**
**United States Army, Appellant**

ARMY 20130833

Headquarters, Fort Knox
Steven E. Walburn, Military Judge (arraignment)
Gregory R. Bockin, Military Judge (motions hearing)
James W. Herring, Jr., Military Judge (trial)
Colonel Christopher T. Fredrikson, Staff Judge Advocate


For Appellant:  Captain Patrick A. Crocker, JA (argued); Colonel Kevin Boyle, JA; Major Amy E. Nieman, JA; Captain Patrick A. Crocker, JA (on brief).

For Appellee:  Captain Carling M. Dunham, JA (argued); Colonel John P. Carrell, JA; Major A.G. Courie III, JA; Captain Benjamin W. Hogan, JA; Captain Carling M. Dunham, JA (on brief).


25 June 2015

--------------------------------
MEMORANDUM OPINION
--------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

LIND, Senior Judge:

A panel composed of officer and enlisted members sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of abusive sexual contact in violation of Article 120, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 920 (2006 & Supp. V 2012).[1]  The panel sentenced

---

[1] The panel acquitted appellant of two specifications of sexual assault, violations of Article 120, UCMJ.  All three of the charged specifications involved the same victim, Specialist (SPC) PV, and were alleged to have occurred on the same evening.

appellant to a bad-conduct discharge, six months confinement, and reduction to the grade of E-1.  The convening authority approved the adjudged sentence.

This case is before the court for review under Article 66, UCMJ.  Appellant raises three assignments of error.  Appellant argues, *inter alia*, that the judge abused his discretion by granting the government's motion to use the charged sexual misconduct to prove propensity to commit the charged sexual misconduct under Military Rule of Evidence [hereinafter Mil. R. Evid.] 413.  We find this assignment of error merits discussion, but not relief.[2]

## FACTS AND PROCEDURAL BACKGROUND

Appellant was charged with sexual assault of Specialist (SPC) PV by penile penetration of the vulva; sexual assault of SPC PV by penile penetration of the anus; and abusive sexual contact of SPC PV by moving her hand onto his penis.  All three specifications were alleged to have occurred on or about 25 November 2012 when SPC PV was incapable of consenting to the sexual acts and contact due to impairment by an intoxicant, a condition which was known or reasonably should have been known by appellant.

Specialist PV testified she accompanied some friends, including Sergeant (SGT) JD, to a party at appellant's home.  At the party, SPC PV became extremely intoxicated:  she vomited, fell off a couch, and had to be helped into one of the bedrooms in the duplex.  She did not remember who took her to the bedroom.  At some point during the evening, SPC PV left the bedroom and went into the bathroom to vomit.  She fell on the floor and was told she was helped back to the bedroom by another friend.  Specialist PV testified she went back to sleep and was sexually assaulted by appellant between her return to bed and approximately 0500.

In describing the charged sexual assaults, SPC PV testified in pertinent part that after she went back to sleep:

> I was somehow moved rooms . . . .  It felt like I was carried and someone was moving me, but I was half asleep and I didn't seen [sic] them 'cause it was dark . . . .  I was on the bed, assaulted from behind.

---

[2] Appellant personally raises matters pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), none of which merits discussion or relief.

The following exchange occurred between trial counsel and SPC PV:

> TC: Now, did you immediately realize what was happening when you woke up?
>
> SPC PV: Um, when I woke all the way, sir.
>
> TC: So what did you think was going on when you first started waking up?
>
> SPC PV: Um, that something was happening, sir, but I-- that it was a dream, sir.
>
> TC: At what point did you realize that it might not be a dream?
>
> SPC PV: When I woke up and when I went from the bedroom to the restroom, sir.

Specialist PV went on to testify that she felt the penis of a person, who was wearing white sweat pants, in her vagina for "a couple of minutes" and then she became "unconscious" again. Specialist PV then woke up to feel a penis in her anus and that she "passed out" afterwards. Specialist PV testified she believed her attacker was appellant because he was the only person at the party wearing white sweat pants. Specialist PV testified she woke up a third time lying on her back, facing up, on the bed. She saw appellant "standing beside the bed using [her] hand with his hand touching his penis." Specialist PV demonstrated how appellant was moving her hand to "cup his penis" and "move [her] hand with his." Finally, SPC PV testified that after she woke up to see appellant using her hand to touch his penis, she "felt sick and wanted to go to the restroom and get away from [appellant]" and she "got off the bed, saw his face, and went to the restroom," and it was at this point that she realized she was in a different room than the one she first fell asleep in.

While SPC PV was in the bathroom, she testified appellant came in, turned the lights on, and gave her a glass of cold water, and appellant left when SPC PV closed the bathroom door. A short time later, SPC PV went to the living room. Appellant was on a couch watching television and SGT JD was sleeping on an adjacent couch. Appellant gave SPC PV some blankets and she fell asleep beside SGT JD at approximately 0500. Specialist PV testified she woke up the next morning, went home with SGT JD, asked him for appellant's telephone number, and that when she arrived at her barracks, she went to the CQ desk to ask for the chaplain's telephone number. Specialist PV then called the chaplain and told him about the sexual assaults. The chaplain contacted the unit's Sexual Harassment/

3

Assault Prevention and Response Program (SHARP) point of contact, and SPC PV filed a restricted report of sexual assault, and underwent a sexual assault forensic examination.

Specialist PV could not give a more definitive timeline to when the sexual assaults occurred or the time in between each charged sexual assault. Multiple witnesses who attended the party testified. Due to their intoxication, they could not remember timeframes with precision. None of these witnesses remembered appellant interacting with SPC PV during the evening. All of the witnesses who were at the party testified that SPC PV was extremely intoxicated and had to be helped to the restroom and to one of the bedrooms. All of the witnesses except SGT JD left at approximately 0230. Sergeant JD testified that, prior to going to sleep at some point between 0330 and 0530, he watched appellant go to his bedroom, which was on the opposite side of the house from the bedroom where SPC PV had been placed earlier in the evening. Sergeant JD also testified that when he awoke the next morning, SPC PV was on the floor in the living room.

The soldier who was on CQ duty testified that SPC PV appeared distressed. The chaplain testified that SPC PV appeared like "something was very wrong," and the SHARP point of contact testified he found SPC PV sitting on a curb with her head in her hands crying. No physical injuries were found on SPC PV from the sexual assault forensic examination. The Army crime lab analyzed anal and vaginal swabs from SPC PV, SPC PV's underwear, and buccal swabs from appellant and the several other males who attended the party. No semen was found on the underwear or the vaginal or anal swabs. Male DNA was found on the rectal swab. Male DNA, one major and two minor profiles, was also found on the crotch of SPC PV's underwear. The lab conducted Y-STR testing[3] on the major profile of the male DNA found in SPC PV's underwear.[4] This test excluded SGT JD, who was the only person other than appellant and SPC PV present at the party at the time of the alleged sexual offenses. The test was also consistent with the Y-STR profile of appellant and his paternal male relatives with a frequency of 1 in approximately 400 individuals in the black population. The defense rested without presenting any evidence.

Prior to trial, the government made a motion under Mil. R. Evid. 413 requesting that the evidence admissible to prove the three charged sexual offenses also be used to prove appellant's propensity to engage in sexual offenses. The

---

[3] The expert testified that Y-STR testing is a type of DNA test that focuses only on the Y chromosome.

[4] The lab could not determine who contributed to the two minor male DNA profiles.

military judge performed the three-factor relevance test under Mil. R. Evid. 413 and the Mil. R. Evid. 403 balancing test, which included analysis of the factors in *United States v. Wright*, 53 M.J. 476, 482 (C.A.A.F. 2000), and granted the government's motion. The military judge reached the following pertinent conclusions of law:

> After considering the *Wright* factors . . . , the Court finds by a preponderance of the evidence and concludes the following:
>
> 1. The accused is charged with three total specifications of violating Article 120, UCMJ, two specifications of sexual assault and one specification of abusive sexual contact. These charged offenses are clearly acts of sexual assault as defined in [Mil. R. Evid.] 413.
>
> 2. The proffered evidence is admissible under [Mil. R. Evid.] 401 and 402 as it is logically relevant to show the accused's propensity to sexually assault SPC [PV]. Additionally, the evidence is logically relevant to show the accused performed three different sexual acts on the alleged victim while she [w]as in and out of consciousness due to intoxication.
>
> 3. In conducting a [Mil. R. Evid] 403 analysis applying the *Wright* factors, the Court finds as follows:
>
>     (a) <u>Strength of Proof</u>. The Government has presented solid evidence of the alleged sexual acts. At trial, the Government will be offering the testimony of the alleged victim, SPC [PV]. Her 10 January 2013 sworn statement describes in detail the alleged sexual assaults. She describes the alleged sexual assaults in detail again, in 40 pages of testimony, at the Article 32 hearing held on 18 April 2013.
>
>     (b) <u>Probative Weight</u>. The probative weight of the evidence is high, demonstrating the accused's propensity to sexually assault SPC [PV] while she [w]as in and out of consciousness due to intoxication. According to SPC [PV], the accused repeatedly assaulted her that evening in a variety of ways. That there are some factual differences between the alleged sexual assaults does not lessen the probative value of each. There is no requirement under

5

[Mil. R. Evid.] 413 that the acts be exactly the same. *See United States v. Ediger*, 68 M.J. 243 (C.A.A.F. 2010).

(c) <u>Less Prejudicial Evidence</u>.  The parties have presented the Court with no less prejudicial evidence of the sexual misconduct and this evidence will be a part of the Government's case-in-chief.

(d) <u>Distraction</u>.  The fact finder will not be distracted from the primary issues in the case.  Under the facts of this case the [Mil. R. Evid.] 413 evidence is the evidence of the alleged sexual offenses.  The Court is also confident that the detailed instruction the panel will receive concerning the use of this evidence will decrease any likelihood that the members would be unfairly prejudiced to convict the accused on the basis of such propensity evidence (assuming they did not find the elements of the charged offenses were proved beyond a reasonable doubt).

(e) <u>Time to Prove</u>.  The time needed to prove the alleged misconduct is not a factor based on the posture of this case (i.e., all incidents are charged offenses).

(f) <u>Temporal Proximity</u>.  All of the alleged sexual assaults took place in the accused's home, pertain to the same alleged victim, and happened during the same evening.

(g) <u>Frequency</u>.  The number of alleged sexual assaults (3), which allegedly occurred in one evening, weighs in favor of admission.

(f) [sic] <u>Intervening Circumstances/Relationships</u>. There is no evidence of intervening circumstances or other relationships, other than the fact that the accused is an NCO [(non-commissioned officer)] in the alleged victim's unit.

4.  After conducting the [Mil. R. Evid.] 403 balancing test using the *Wright* factors, the Court finds the probative value of the charged sexual assaults are [sic] not substantially outweighed by the danger of unfair prejudice to the accused, confusion of the issues, misleading the

members or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

At trial, the military judge gave the standard "Spillover" instruction in Note 1, paragraph 7-17 of the Military Judges' Benchbook, followed by a tailored instruction on the use of charged Mil. R. Evid. 413 evidence to prove propensity as provided in Note 4 of paragraph 7-13-1 (Other crimes, wrongs, or acts evidence). *See* Dep't of Army, Pam. 27-9, Legal Services: Military Judges' Benchbook [hereinafter Benchbook] (1 Jan. 2010). The tailored instruction was given to the members as follows:

> I just instructed you that you may not infer the accused is guilty of one offense because his guilt may have been proven on another offense and that you must keep the evidence with respect to each offense separate. Specifically, evidence that the accused committed the sexual assault offense alleged in Specification 1 of the Charge, the sexual assault offense alleged in Specification 2 of The Charge, or the sexual contact offense alleged in Specification 3 of the Charge has no bearing on your deliberations in relation to any other charged offenses.
>
> However, evidence that the accused committed a sexual assault offense, and in this case that's the sexual assault offenses alleged in Specifications 1 and 2 of The Charge and the sexual contact offense alleged in Specification 3 of the Charge, this may have a bearing on your deliberations in relation to the other charged sexual assault offenses . . . only under the circumstances I am about to describe:
>
> First, you must determine by a preponderance of evidence that it is more likely than not that the sexual assault offense occurred;
>
> If you determine by a preponderance of the evidence that one or more of the offenses alleged in Specifications 1, 2, or 3 of the Charge occurred, even if you are not convinced beyond a reasonable doubt that the accused is guilty of one or more of those offenses, you may nonetheless then consider the evidence of such offenses, or its bearing on any matter to which it is relevant in relation to the other sexual assault offenses;

You may also consider the evidence of such other acts of sexual assault for its tendency, if any, to show the accused's propensity or predisposition to engage in sexual assault.

You may not, however, convict the accused solely because you believe he committed the sexual assault in Specification 1 of the Charge, or the sexual assault in Specification 2 of the Charge, or the sexual contact in Specification 3 of the Charge, or solely because you believe the accused has a propensity or predisposition to engage in sexual assault. In other words, you cannot use this evidence to overcome the failure of proof in the government's case, if you perceive any to exist.

As is the case with all charged offenses, the accused may be convicted of a sexual assault offense only if the prosecution has proven each element beyond a reasonable doubt.

Each offense must stand on its own and proof of one offense carries no inference that the accused is guilty of any other offense. In other words, proof of one sexual assault creates no inference that the accused is guilty of any other sexual assault. However, it may demonstrate that the accused has a propensity to commit that type of offense.

The prosecution's burden of proof to establish the accused's guilt beyond a reasonable doubt remains as to each and every element of each offense charged. Proof of one charged offense carries with it no inference that the accused is guilty of any other charged offense.[5]

---

[5] As we pointed out in *United States v. Barnes*, we note that the sentences in Benchbook Instruction 7-13-1, Note 4, stating "[i]n other words, proof of one sexual assault creates no inference that the accused is guilty of any other sexual assault" and "[p]roof of one charged offense carries with it no inference that the accused is guilty of any other offense" could be read to prevent the fact-finder from drawing an inference that an accused has a propensity to commit sexual assault. __ M.J. ___ , 2015 CCA LEXIS 194, *23-24 (Army Ct. Crim. App. 8 May 2015). As we held in *Barnes*, any error is harmless as it benefitted appellant. *Id.* at ___, 2015 CCA

(continued . . .)

Following the military judge's substantive instructions, the government and defense made closing arguments to the panel. Neither party argued that the evidence presented to directly prove the charged offenses could also be used to demonstrate propensity.

**LAW**

Military Rule of Evidence 413(a) provides that "[i]n a court-martial proceeding for a sexual offense, the military judge may admit evidence that the accused committed any other sexual offense" and "[t]he evidence may be considered on any matter to which it is relevant." This includes using evidence of another sexual offense to prove that an accused has a propensity to commit sexual offenses. *United States v. James*, 63 M.J. 217, 219-20 (C.A.A.F. 2006); *Wright*, 53 M.J. at 480. There is a general presumption in favor of admission of evidence offered under Mil. R. Evid. 413. *United States v. Berry*, 61 M.J. 91, 94-95 (C.A.A.F. 2005) (citing *Wright*, 53 M.J. at 482-83).

Our superior court has set forth requirements for admissibility of evidence of similar sexual offenses under Mil. R. Evid. 413. The analysis begins by examining whether three threshold requirements are met: (1) the accused must be charged with a sexual offense; (2) the proffered evidence must be evidence of the accused's commission of any other sexual offense; and (3) the evidence must be relevant under [Mil. R. Evid.] 401 and 402. *United States v. Solomon*, 72 M.J. 176, 179 (C.A.A.F. 2013) (citations omitted). With regard to the second threshold requirement, the military judge must conclude that "the members could find by a preponderance of the evidence that the offenses occurred." *Id.* (citing *Wright*, 53 M.J. at 483 (citing *Huddleston v. United States*, 485 U.S. 681, 689-90 (1988))).

Once these three threshold findings are met, "the military judge is constitutionally required to also apply a balancing test under [Mil. R. Evid.] 403." *Id.* at 179-80 (citing *Berry*, 61 M.J. at 95). Military Rule of Evidence 403 states that the judge "may exclude relevant evidence if its probative value is substantially outweighed by the danger of . . . unfair prejudice, confusing the issues, misleading the members, undue delay, wasting of time, or needless presenting cumulative evidence." In the context of a Mil. R. Evid. 413 analysis, the Mil. R. Evid. 403 "balancing test should be applied in light of the strong legislative judgment that evidence of prior sexual offenses should ordinarily be admissible." *Solomon*,

---

(. . . continued)

LEXIS 194, at *25 (citing *United States v. Rogers*, 587 F.3d 816, 822 (7th Cir. 2009)).

72 M.J. at 180 (citation and internal quotation marks omitted). "The importance of careful balancing arises from the potential for undue prejudice that is inevitably present when dealing with propensity evidence." *Ediger*, 68 M.J. at 248 (quoting *James*, 63 M.J. at 222) (internal quotation marks omitted). Courts balance numerous factors in a Mil. R. Evid. 403 analysis involving Mil. R. Evid. 413, including, but not limited to:

> the strength of the proof of the prior act; the probative weight of the evidence; the potential to present less prejudicial evidence; the possible distraction of the fact finder; the time needed to prove the prior conduct; the temporal proximity of the prior event; the frequency of the acts; the presence of any intervening circumstances; and the relationship between the parties.

*Berry*, 61 M.J. at 95 (citing *Wright*, 53 M.J. at 482). "No one factor is controlling, although in a given case it could be." *United States v. Bare*, 65 M.J. 35, 37 (C.A.A.F. 2007). When the Mil. R. Evid. 403 balancing test requires exclusion of the evidence at issue, "the presumption of admissibility is overcome." *Berry*, 61 M.J. at 95 (citing *Wright*, 53 M.J. at 482-83).

In the case of an accused charged with sexual offenses, the plain language of Mil. R. Evid. 413 imposes no temporal limit on the admission of evidence of the accused's commission of any other sexual offenses. *See* Mil. R. Evid. 413. The drafter's analysis of Mil. R. Evid. 413 states that the rule is intended to "provide for more liberal admissibility of character evidence in criminal cases of sexual assault where the accused has committed a *prior* act of sexual assault." *Supplement to the Manual for Courts-Martial, United States* (2012 ed.), Mil. R. Evid. 413 analysis at A22-42 (emphasis added). However, in *United States v. James*, our superior court affirmed the admission of other sexual offenses that occurred *after* the charged sexual offenses. 63 M.J. 217. The court looked to the legislative history of Mil. R. Evid. 413 and held that "as long as appropriate safeguards are applied, [Mil. R. Evid.] 413 and [Mil. R. Evid.] 414 are not limited to evidence of behavior taking place prior to that charged." *Id.* at 221. The court reached this conclusion as a result of: "(a) the plain language of the rules; (b) a logical application of long-standing principles of relevance, (c) a persuasive opinion by the only federal circuit court to have addressed the issue, and (d) the existence of the protections of [Mil. R. Evid.] 403 . . . ." *Id.* The court went on to state:

> We can find no reason to conclude that prior misconduct is probative and subsequent misconduct is not. It is the fact of the other act that makes it probative, not whether it happened before or after the act now charged. The rules of relevance therefore do not require a temporal limitation

> on the application of [Mil. R. Evid.] 413 and [Mil. R. Evid.] 414.  In the application of the [Mil. R. Evid.] 403 balancing . . . , temporal factors may be important.

*Id*.

This court has recently affirmed the use of evidence of other charged sexual offenses under Mil. R. Evid. 413 to demonstrate propensity.  *Barnes*, __ M.J. ___ , 2015 CCA LEXIS 194;[6] *see also United States v. Burton*, 67 M.J. 150, 152 (C.A.A.F. 2009) ("The [g]overnment may not introduce similarities between a charged offense and prior conduct, whether charged or uncharged, to show modus operandi or propensity without using a specific exception within our rules of evidence such as [Mil. R. Evid.] 404 or 413."); *Wright*, 53 M.J. at 478, 483 (affirming use of charged sexual assaults on different victims to prove propensity under Mil. R. Evid. 413).

## DISCUSSION

This is a case of first impression.  It is a sexual assault case involving three charged sexual offenses by appellant against the same victim in the same place during an approximate two-hour window of opportunity.  The evidence at issue was properly admitted at trial as direct evidence to prove the charged conduct.  The military judge granted the government's motion to use this same evidence under Mil. R. Evid. 413 as evidence of appellant's propensity to commit sexual offenses against SPC PV as she was coming in and out of consciousness.  The parties have presented no authority addressing the application of Mil. R. Evid. 413 to any case involving similar facts, and we have found none.

As this case involves evidence admitted at trial to directly prove the charged offenses *and* to also demonstrate propensity in accordance with Mil. R. Evid. 413, no new or uncharged evidence is at issue.  Nonetheless, the military judge is required to do the same Mil. R. Evid. 413 analysis described supra prior to allowing the government to use the previously admitted evidence to demonstrate or argue that appellant has the propensity to commit sexual offenses.

We review the judge's decision to allow the government to use the evidence of charged misconduct for propensity purposes under Mil. R. Evid. 413 for an abuse of discretion.  *See Solomon*, 72 M.J. at 179 (citing *Ediger*, 68 M.J. at 248).

---

[6] In *Barnes*, there were two charged sexual assaults with different victims, one in 2006 and the other in 2009.  __ M.J. at ___ , 2015 CCA LEXIS 194, at *2.

The military judge conducted a thorough Mil. R. Evid. 413 analysis, applying the proper test. We first address the three threshold requirements for admission of evidence under Mil. R. Evid. 413. The military judge properly found appellant was charged with three sexual offenses. Each of the three charged offenses is an "other sexual offense" with respect to each other. We recognize that when conducting the second prong of the relevance analysis, the military judge did not expressly conclude that the members could find by a preponderance of the evidence that the offense occurred. Such a finding is a required part of the relevance analysis. *Id.* (citing *Wright*, 53 M.J. at 483 (citing *Huddleston*, 485 U.S. at 689-90)). However, we conclude the military judge implicitly reached the *Huddleston* conclusion because when assessing the strength of the evidence under Mil. R. Evid. 403, the judge concluded that the government "presented solid evidence of the alleged sexual acts" and would be offering the testimony of SPC PV who had already described the sexual assaults in detail in a sworn CID statement and forty pages of Article 32 testimony. *See Solomon*, 65 M.J. at 53 n.2.

With respect to the third factor, the military judge found the proffered evidence admissible under Mil. R. Evid. 401 and 402 as logically relevant to show appellant's propensity to commit sexual offenses against SPC PV and to show appellant performed three different sexual offenses on SPC PV "while she was in and out of consciousness due to intoxication." Military Rule of Evidence 401 states that evidence is relevant if "it has *any* tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Appellant's commission of three sexual offenses during the course of an approximately two hour window of opportunity against the same victim has *some* tendency to demonstrate that appellant has propensity to commit sexual offenses against SPC PV while she was coming in and out of consciousness. We conclude the military judge did not abuse his discretion in finding the evidence admitted to prove the charged offenses was also relevant to prove appellant's propensity to commit sexual assault under Mil. R. Evid. 413.

Now we address whether the military judge abused his discretion in applying the Mil. R. Evid. 403 balancing test. When the judge properly conducts the Mil. R. Evid. 403 balancing test, we will uphold his decision absent a clear abuse of discretion. *Ediger*, 68 M.J. at 248.

We take no issue with the military judge's findings regarding the strength of proof, less prejudicial evidence, time to prove, and intervening circumstances and relationships. However, we cannot agree with the legal conclusions drawn with respect to frequency, temporal proximity, probative weight, and distraction. Frequency, temporal proximity, and probative weight are factors that are invariably linked. The probative weight of the evidence of other sexual offenses is examined in the context of the frequency of the events, the temporal proximity between the events, and the circumstances surrounding each of the events.

We recognize that cases involving temporal proximity usually address how much time between sexual acts may be too much. *See Berry*, 61 M.J. at 96 ("The length of time between the events alone is generally not enough to make a determination as to the admissibility of the testimony. The circumstances surrounding the individual and the events that transpired in the intervening period must be taken into consideration."). Specialist PV's vague testimony regarding the timing of the alleged sexual offenses leaves the military judge and us to speculate whether appellant committed the three sexual offenses against SPC PV in a matter of minutes or during a longer time frame within the two hours of opportunity. At most, however, the sexual offenses occurred within a two-hour period. While the judge did not specifically state that the short time period between offenses favored admission, his ruling lends itself to that interpretation, and we disagree.

Examining the frequency of the events, the judge held that the number of alleged sexual offenses weighed "in favor of admission." We again disagree. Particularly in this case where the three alleged sexual offenses occurred within a two-hour window with the same person and in the same location, the frequency does not weigh in favor of use of the evidence to prove propensity.

The probative weight of the alleged offenses must in turn be analyzed not only through the circumstances surrounding the offenses, but in light of their temporal proximity and frequency. The probative weight of propensity evidence increases with the frequency and similarity of acts over a period of time. Evidence showing that an accused has committed other, similar sexual offenses over a period of time naturally weighs more heavily on the scale of probative weight. Such evidence tends more reliably to prove that such an accused has a natural inclination or tendency to commit such acts. The facts of this case fall at the lighter end of the scale: separate acts committed at essentially the same time and place with the same person and little to discern any greater history of behavior between the two. That is not to say this is not *evidence* of propensity, it is merely to say that its probative weight resides on the lower end of the scale.[7] Under these facts, appellant's commission of three sexual offenses against one person in one place at an uncertain time during a two-hour window of opportunity has minimal probative weight regarding appellant's propensity to commit sexual offenses.

Finally, the danger of confusing panel members with a propensity instruction increases in a case where the evidence to prove propensity is relevant and admissible

---

[7] *James*, 63 M.J. at 221 ("People certainly do change over time and the fact that someone acts in a particular manner does not mean they have always acted in that manner, or for that matter that they always will.").

as direct evidence of each of the charged offenses and also as intrinsic evidence of lustful intent, absence of accident, plan, and identity.

Our examination of the factors involving frequency, temporal proximity, probative weight, and confusion of the panel members leads us to conclude that the value of this evidence as propensity evidence is especially low under the circumstances. Consequently, because the probative value of the evidence of the charged sexual offenses to prove appellant's propensity to commit sexual offenses is so low, the risk of unfair prejudice does not have to be high to substantially outweigh the probative value. Whether our disagreement with the judge on this matter leads us to conclude that he abused his discretion, we need not decide, for even assuming he did, we find no prejudice.[8]

---

[8] Appellant argues *inter alia* that this is an instructional error of constitutional magnitude. In *United States v. Schroder*, our superior court held that the military judge's instruction regarding the use of uncharged misconduct evidence under Mil. R. Evid. 414 was of constitutional magnitude because "the instruction was susceptible to unconstitutional interpretation: that the members were permitted to conclude that the presence of 'similarities' between the charged and uncharged misconduct were, standing alone, sufficient evidence to convict [a]ppellant of the charged offenses." 65 M.J. 49, 55 (C.A.A.F. 2007).

However, this case is not one of error in the instruction itself. The members received a standard spillover instruction *and* a spillover instruction regarding the use of the evidence admitted to directly prove each of the sexual assaults to also demonstrate propensity. The juxtaposing of those two instructions could cause confusion for the members, but not confusion of constitutional magnitude. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (Instructional errors are of constitutional magnitude if there is "'a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." (quoting *Boyde v. California*, 494 U.S. 370, 380 (1990))); *see also United States v. Dacosta*, 63 M.J. 575, 579 (Army Ct. Crim. App. 2006). The military judge's instructions followed the language of Benchbook Instruction 7-13-1, Note 4 and were clear that while the members could consider evidence of the charged offenses to prove appellant had a propensity to commit sexual offenses, that evidence could not overcome a failure of proof in the government's case and the government must prove each element of each charged offense beyond a reasonable doubt.

We find *United States v. Solomon* to be more on point. 72 M.J. 176. Although *Solomon* involved erroneous admission of an uncharged sexual assault, the error by the military judge in applying the Mil. R. Evid. 403 balancing test led to the military judge giving the members an instruction on use of Mil. R. Evid. 413

(continued . . .)

We conclude that any possible abuse of discretion in this respect did not have a substantial influence on the findings. *See Solomon*, 72 M.J. at 182. In our determination, we weighed: (1) the strength of the government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question. *United States v. Kerr*, 51 M.J. 401, 405 (C.A.A.F. 1999).

The government's evidence of the abusive sexual contact was stronger than the earlier sexual assaults where SPC PV did not see her attacker and felt "that something was happening . . . but . . . that it was a dream." Specialist PV testified that at the time of the abusive sexual contact, she "woke up all the way," was lying on her back, and saw appellant's face. At the time there were only three people in appellant's house: appellant, SPC PV, and SGT JD. Sergeant JD was not wearing white sweat pants as described by SPC PV and was excluded as a contributor to the major male DNA profile found in the crotch of SPC PV's underwear. The fresh complaint by SPC PV and her distressed demeanor the morning after the sexual assault also corroborates her testimony. The defense case was based on cross-examination of the government witnesses, challenging SPC PV's memory, and arguing reasonable doubt. It was not particularly strong. The evidence to prove propensity was not material or of high quality. All of the evidence at issue was previously admitted as direct evidence of the charged offenses. The evidence was relevant as intrinsic evidence of appellant's pattern of lustful intent during his commission of the three sexual assaults against SPC PV. *United States v. Rude*, ARMY 20120139, 2015 CCA LEXIS 72, at *21 (Army Ct. Crim. App. 26 Feb. 2015) (mem. op.) (citation omitted). The only exposure the members received regarding the use of the evidence to establish appellant's propensity to commit sexual assault came from the military judge's instruction. Neither the government nor the defense

_____

(. . . continued)
evidence. *See United States v. Solomon*, NMCCA 201100582, 2012 CCA LEXIS 291, at *7-8 n. 1 (N.M. Ct. Crim. App. 31 Jul. 2012), *rev'd*, 72 M.J. 176. The Court of Appeals for the Armed Forces held in *Solomon* that a military judge's abuse of discretion in applying the Mil. R. Evid. 403 balancing test to admit extrinsic evidence under Mil. R. Evid. 413 was a nonconstitutional error. *Id.* at 182 (citing *Berry*, 61 M.J. at 97). Similarly, in this case, although the military judge did not admit any uncharged or new evidence, it was his Mil. R. Evid. 403 balancing test that caused the military judge to allow evidence otherwise properly admitted to also be used by the members as propensity evidence. This caused him to give the members Benchbook Instruction 7-13-1, Note 4 (Use of charged [Mil. R. Evid.] 413 or 414 evidence). Thus, as in *Solomon*, the error in this case would be that the military judge abused his discretion in the Mil. R. Evid. 403 balancing analysis, which is a nonconstitutional error.

referenced propensity evidence in their closing arguments. Both sides based their arguments on whether the government had established each and every element of each offense beyond a reasonable doubt. The members acquitted appellant of the two most serious sexual assault offenses. We are confident the military judge's admission of the evidence for consideration by the panel as propensity evidence did not substantially influence the findings.

## CONCLUSION

The findings of guilty and the sentence are AFFIRMED.

Judge KRAUSS and Judge PENLAND concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court