# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, FEBBO, and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Master Sergeant ALAN S. GUARDADO**
**United States Army, Appellant**

ARMY 20140014

Headquarters, III Corps and Fort Hood
Rebecca K. Connally, Military Judge
Colonel Stuart W. Risch, Staff Judge Advocate (pretrial)
Colonel Ian G. Corey, Staff Judge Advocate (post-trial)

For Appellant: Mr. James S. Trieschmann, Esquire; Captain Payum Doroodian, JA (on brief); Mr. James S. Trieschmann, Esquire; Captain Michael A. Gold, JA (on supplemental brief and reply brief).

For Appellee: Lieutenant Colonel A.G. Courie III, JA; Major Christopher A. Clausen, JA; Captain Samuel E. Landes, JA (on brief); Lieutenant Colonel A.G. Courie III, JA; Captain Carling Dunham, JA; Captain Samuel E. Landes, JA (on brief in response to supplemental assignment of error).

15 November 2016

------------------------------------
OPINION OF THE COURT
------------------------------------

WOLFE, Judge:

Appellant, Master Sergeant (MSG) Alan Guardado, faced numerous offenses of sexual misconduct with children. The most serious conviction related to his touching of his daughter's genitals on her tenth birthday. Separately, appellant was also convicted of cornering his niece in a hotel room and indecently grabbing her pants and trying to pull them down. The remaining offenses all stem from appellant's time as the coach of a girls' soccer team. For several years appellant coached a team composed of girls roughly aged thirteen to sixteen years. Neither appellant's daughter nor niece were on the team. Several of the children accused appellant of indecent and inappropriate conduct when he asked them about their sexual acts, asked if they shaved their genitals, commented sexually on their appearance, or suggested they work at a strip club where he could watch them.

The government's charging strategy was aggressive. So aggressive that, as we must discuss in detail below, several of the offenses are multiplicious and unreasonably multiplied.

Ultimately, a panel with enlisted representation convicted appellant of one specification of aggravated sexual contact with a child, three specifications of indecent liberties with a child, three specifications of battery of a child under the age of sixteen, four specifications of committing a general disorder, one specification of indecent assault, one specification of indecent acts, and one specification of using indecent language with a child, in violation of Articles 120, 128, and 134, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 920, 928, 934 (2000 & Supp. V 2006; 2006; 2006 & Supp. I 2008).[1]

The court-martial sentenced appellant to confinement for eight years, forfeiture of all pay and allowances, and a reduction to the grade of E-1. The court-martial did not adjudge a punitive discharge.[2] The convening authority approved the sentence and ordered it executed.

Appellant assigns twelve errors to this court. Additionally, we identify one other issue worthy of discussion. First, we address the application of *United States v. Hills*, 75 M.J. 350 (C.A.A.F. 2016), to the propensity instruction given by the

---

[1] The panel acquitted appellant of one specification of rape, one specification of indecent liberties with a child, one specification of wrongful sexual contact, one specification of abusive sexual contact, and one specification of assault consummated by battery. The specification of rape alleged appellant had sexual intercourse with an incapacitated soldier between November 1996 and 1 January 1998. The other allegations were from soccer players on his team. Unless specifically noted, the remainder of the opinion does not discuss the specifications that resulted in an acquittal.

[2] We note the sentencing worksheet submitted by the panel was only partially filled out and was ambiguous as to whether the court-martial intended to sentence appellant to a punitive discharge. The military judge did not resolve the ambiguity in the sentencing worksheet prior to the announcement of the sentence or clarify any discrepancy between the announced sentence and the worksheet. Nonetheless, the sentence as announced—which did not include a punitive discharge—was clear, so we have no issue on appeal. *See* Rule for Court-Martial [hereinafter R.C.M.] 1007 ("Announcement of sentence") and R.C.M. 1008 ("Impeachment of sentence"). Likewise, review by this court is limited to the sentence "as approved" by the convening authority and the convening authority here approved the sentence as announced on the record.

military judge. We find the instruction was error, but harmless beyond a reasonable doubt. Next, we address appellant's contention that the court-martial lacked subject matter jurisdiction over several specifications because of the preemption doctrine. We determine the preemption doctrine is not jurisdictional and the offenses were not preempted. Third, we address whether the military judge erred when she ruled that defense witnesses would not be allowed to testify unless the witnesses agreed to be interviewed by the government. We find the military judge erred, but that the error was harmless. Finally, we consolidate appellant's several assignments of error that the specifications are both multiplicious and unreasonably multiplied, and we grant appellant his requested relief for those issues. The remaining assignments of error, as well as the issues personally raised by appellant under *United States v. Grostefon,* 12 M.J. 431 (C.M.A. 1982), are either mooted by our resolution of other issues or do not merit detailed discussion.[3]

---

[3] Appellant's remaining issues were are follows:

In appellant's second assignment of error he requests relief for excessive post-trial delay. We find no due process violation, and are not compelled under the facts of this case to exercise our discretionary Article 66(c), UCMJ, authority to grant relief.

In his fifth assignment of error appellant argues that one of the girls on appellant's soccer team was in fact an adult at the time of the alleged offense, and therefore his comments to her were not criminal. We find the offense to be legally sufficient.

In his sixth assignment of error, appellant argues that even if the victim was a child, then the offense was outside the statute of limitations. We find no merit in this claim.

In his ninth assignment of error appellant alleges the military judge erred in failing to dismiss the specifications for unlawful command influence because of comments made by the Chief of Staff of the Army. Appellant does not allege the comments affected the adjudicative portion of the trial, but rather influenced or appeared to influence the convening authority's referral decision. We find no error.

Appellant's tenth assignment of error alleges his defense counsel was ineffective during presentencing hearing for failing to object to the trial counsel's presentencing argument. We find appellant has not met his high burden of establishing that his counsel was ineffective and that he was prejudiced by this result.

In his eleventh assignment of error, appellant argues the military judge erred in failing to, sua sponte*,* issue a curative instruction. During cross-examination,

(continued . . .)

**BACKGROUND**

Appellant's convictions fall into three categories: the assault of his daughter; the offenses against his niece; and the offenses against the children whom he coached in soccer.

Appellant was charged with rape of a child for penetrating his daughter's genitalia with his finger. Around the time of her tenth birthday, appellant's daughter was visiting him in Alabama. She testified during the visit, she accompanied her father while they were driving to purchase birthday supplies for her tenth birthday. During the drive, she testified "he started sticking his hand in my pants and felt around and stuff." While she testified that appellant had "slightly" penetrated her vulva, her testimony was somewhat equivocal. The panel convicted appellant of the lesser-included offense of aggravated sexual contact of a child.

Appellant's niece testified that during a family reunion appellant asked her to accompany him to Walmart for an errand. Appellant, while sitting in the living room with his niece, had previously texted her, and told her that she was "beautiful." She said she reluctantly accompanied him, but instead of going directly to Walmart appellant drove them to his hotel and asked her to come into his room to help him get something. After entering the room, she said appellant locked the door and demanded she take off her pants. After her repeated refusals, she said appellant came up to her and began to unbutton her pants. She said appellant ceased his advances when she backed away and grabbed her cellphone out of her pocket. Appellant then repeatedly told her she was not to tell anyone what had happened. They then left the hotel room and drove to Walmart. As they drove, appellant asked his niece whether she shaved her pubic area. Appellant's niece was fourteen at the time. She reluctantly disclosed this incident to her mother several years later upon learning that appellant was going to have a daughter. For this conduct, the panel convicted appellant of battery of a child, indecent assault, and indecent acts. All

---

(. . . continued)

appellant stated he was confident of his testimony because he had reviewed his own bank records. The trial counsel asked why, if the records supported his version of events, he had not brought them to the trial. The military judge sustained a defense objection. We find the military judge did not abuse her discretion by not issuing a curative instruction, especially given that the defense did not request one.

In his final assignment of error appellant argues the evidence supporting Specification 1 of Charge I (the aggravated sexual contact on his niece) is factually insufficient. After reviewing the evidence, we disagree.

three specifications alleged the same facts: that appellant grabbed his niece's pants and tried to unbutton them.

The third set of offenses all derive from appellant's time as a volunteer coach of a girls traveling soccer team. The government called several of the girls to testify about the comments appellant had made during the course of being their coach. Several testified that appellant had made inappropriate remarks about their looks, such as one having "a nice ass." Their testimony included that appellant would drive by a local strip club when the girls were in his car. Appellant would talk to one or more of the girls about dropping them off at the club and watching them "dance and make money there." Testimony included that appellant would comment on pictures they posted on Facebook such as saying "You have a nice body" in response to a picture of a girl in a swim suit. Appellant also asked about whether they shaved their pubic area and what sexual acts they had done with boyfriends. One player testified that at "most practices" appellant would come up behind her and massage her waist or shoulders. She also testified that, in one instance, appellant while driving, reached across the passenger compartment and placed his hand on her thigh. For this conduct, the panel convicted appellant of three specifications of indecent liberties with a child, two specifications of battery, one specification of indecent language, and four specifications alleging general disorders.

## LAW AND DISCUSSION

### A. United States v. Hills

We first consider our superior court's recent decision in *Hills*, 75 M.J. at 350. In *Hills* the Court of Appeals for the Armed Forces (CAAF) addressed the propriety of using propensity evidence under Military Rule of Evidence [hereinafter Mil. R. Evid.] 413 from charged offenses to help prove other charged offenses. In this case, the military judge gave two sets of instructions that raise issues under *Hills*.

First, the military judge instructed the panel members that they could use evidence from certain charged offenses to show the accused's modus operandi, intent, and lack of mistake as to other charged offenses. This raises the question of whether the reasoning of *Hills* applies to evidence considered under Mil. R. Evid. 404(b). We determine it does not.

Second, the military judge instructed the members regarding propensity evidence. The instructions were limited to four specifications, three of which resulted in an acquittal. We determine that this instruction was error, but that appellant suffered no prejudice from this instruction as any error was harmless beyond a reasonable doubt.

5

Nearly half of all cases addressed by this court involve sexual assault offenses and most of those involve cases with multiple charges or multiple victims. Given the long appellate tail of these types of cases, it is likely that *Hills* will be relevant to dozens of cases currently in the appellate 'pipeline.' Accordingly, and because it aids in our understanding of the interconnectedness between Mil. R. Evid. 404(b) and Mil. R. Evid 413, we will address this issue at some length.

### 1. Hills Background

In *Hills* the accused was charged with three different sex offenses. The military judge instructed the members that they could consider propensity evidence stemming from each specification as evidence against the remaining specifications. Unique to *Hills*, however, all offenses were against the same victim, in the same location, and all occurring within a matter of hours of each other. *Id*. at 352.

In other words, as each offense could be used to prove the next, and as none of the offenses were factually independent of each other, this created the potential for circular findings of proof; a possible triple helix of evidence where the evidence of guilt of each offense helps establish the next, spiraling upward until the threshold of reasonable doubt is crossed.

At this court, we expressed skepticism on the appropriateness on the instruction, but affirmed because we failed to find substantial prejudice to the accused. *United States v. Hills*, ARMY 20130833, 2015 LEXIS 268, *27 (Army Ct. Crim. App. 25 Jun. 2015) *rev'd* 75 M.J. 350 (C.A.A.F. 2016). At the CAAF, the court determined the error was of a constitutional magnitude and tested for constitutional error, and for this reason reached a different conclusion. *Hills*, 75 M.J. at 358 ("Given that we apply a different standard for assessing the error than the ACCA did, we also reach a different conclusion regarding the error's import to the outcome of the case.").[4]

### a. The Road to Hills

*Hills* was not the first time either this court, or the CAAF, had confronted a case in which Mil. R. Evid. 413 was applied to charged conduct. We address the history of these cases, as *Hills* should be read in the context of developing case law, especially as it pertains to determining prejudice.

---

[4] In *United States v. Williams*, we again expressed skepticism regarding the use of Mil. R. Evid. 413 in *Hills*. 75 M.J. 621, 625 n.3 (Army Ct. Crim. App. 29 Feb. 2016).

In *United States v. Schroder*, 65 M.J. 49 (C.A.A.F. 2007), a case involving Mil. R. Evid. 414, the military judge instructed the panel that they could consider both charged and uncharged propensity evidence. The CAAF summarized the issues thusly:

> The military judge ruled that the uncharged acts of molestation with SJS and JPR were admissible under M.R.E. 414 to prove that Appellant had raped JPR. He further determined that the uncharged acts with SJS and JPR, *as well as the charged rape of JPR*, were admissible under M.R.E. 414 in order to prove that Appellant had committed indecent acts with SRS.

*Id*. at 52 (emphasis added). While the CAAF found error in the judge's instructions, it was not because the military judge allowed propensity evidence from charged conduct. The CAAF found the error harmless. *Id.* at 57.

In *United States v. Burton*, the CAAF confronted a case where the trial counsel, during his closing argument on findings, argued the accused's propensity with regards to the charged offenses. The court did not find that this was impermissible per se. 67 M.J. 150, 152 (C.A.A.F. 2009). Rather, the court found error because the trial counsel had not followed the rule that "[t]he Government may not introduce similarities between a charged offense and prior conduct, *whether charged or uncharged*, to show modus operandi or propensity without using a specific exception within our rules of evidence, such as Mil. R. Evid. 404 or 413." *Id* (emphasis added). The reasoning in *Burton* would have been beside the point if, for example, it was per se impermissible to argue, under Mil. R. Evid. 413, propensity from charged offenses. In concluding the argument was improper, the CAAF specifically noted the trial counsel *could have* received permission:

> As the Government did not offer the evidence under [Mil. R. Evid.] 413, it did not follow the steps required by [Mil. R. Evid.] 413. Therefore, it may not *a posteriori* justify its closing argument based *on what it might have done*.

 *Id.* at 153 (emphasis added).

The seminal case for our court was *United States v. Barnes,* 74 M.J. 692 (Army Ct. Crim. App. 2015). In that case, unlike *Hills,* the accused had been charged with raping two separate victims, one in 2006 and one in 2009. Citing *Schroder*, 65 M.J. at 62, this court specifically sanctioned the use of propensity

evidence in such circumstances.[5] *Barnes*, 74 M.J. at 697-98.  The CAAF denied a petition for a grant of review of our decision in *Barnes*.  *United States v. Barnes*, 75 M.J. 27 (C.A.A.F. 2015).

### b. Federal Cases

In *Hills* our superior court stated "[n]either this Court nor any federal circuit court has permitted the use of [Mil. R. Evid.] 413 or Federal Rule of Evidence [hereinafter Fed. R. Evid.] 413 as a mechanism for admitting evidence of charged conduct to which an accused has pleaded not guilty in order to show a propensity to commit the very "same charged conduct."  *Hills*, 75 M.J. at 354.  Given the specific facts of *Hills,* this proposition is certainly correct.  We also cannot find any case where a court had ever sanctioned propensity evidence from a charged offense to establish "the very same charged conduct."

However, several federal circuits have stated it is permissible for a jury to consider propensity evidence from one charged offense to help prove a different charged offense (i.e. when it is not the "same charged conduct").

In 2006, U.S. District Judge Kravitz, D. Conn., ruled the defendant was not prejudiced by the joinder of several charges, in part, because Fed. R. Evid. 414 *permitted* evidence of one charged offense of child molestation as proof of another:[6]

> . . . the Court notes that evidence regarding certain
> charges in the Superseding Indictment may well be
> admissible on other charges.  *See* Fed. R. Evid. 414(a) ("In
> a criminal case in which the defendant is accused of an
> offense of child molestation, evidence of the defendant's

---

[5] The CAAF in *Schroder* expressed some reservation regarding the standard Mil. R. Evid. 413/414 instructions.  65 M.J. at 56.  In *Barnes*, we likewise found the instructions troubling.  74 M.J. at 700-01.  Those instructions were mandated by our decision in *United States v. DaCosta*, 63 M.J. 575, 584-85 (Army Ct. Crim. App. 2006).  However, it was not until *United States v. Williams* that we overturned the *DaCosta* mandate.  75 M.J. at 630-31.  The CAAF subsequently set aside this court's decision in *Williams* in light of *Hills. United States v. Williams*, No. 16-0416/AR, 2016 CAAF LEXIS 636 (C.A.A.F. 8 Aug. 2016).   However, nothing in the *Hills* decision calls into question *Williams* treatment of *DaCosta*.  Rather, the *Hills* court likewise found the *DaCosta* instructions troubling. 75 M.J. at 356-57.

[6] Judge Kravitz's ruling was not published but is available at https://ecf.ctd.uscourts.gov/doc1/04111326596.

> commission of another offense or offenses of child
> molestation is admissible.").

Ruling and Order at *4, *United States v. Rivera*, No. 3:05-cr-00261-MRK (D. Conn. Jun. 16 2006) ECF No. 48. To the extent the district judge's ruling was conditional, the logic of this ruling was specifically affirmed by the Second Circuit. The appellate court found there could be no prejudice because:

> Federal Rule of Evidence 414 provides that "[i]n a
> criminal case in which the defendant is accused of an
> offense of child molestation, evidence of the defendant's
> commission of another offense or offenses of child
> molestation is admissible, and may be considered for its
> bearing on any matter to which it is relevant." Fed. R.
> Evid. 414(a). The same rule defines "child" as a person
> below the age of fourteen. [Fed. R. Evid.] 414(d). As a
> consequence, proof as to counts two and three (relating to
> Brian, age thirteen) would likely have been admissible as
> to the three other counts. *The Federal Rules of Evidence*
> *thus specifically sanction the kind of showing that Rivera*
> *says is impermissible and conducive to spillover.*

*United States v. Rivera*, 546 F.3d 245, 254 (2d Cir. 2008) (emphasis added), *cert. denied*, 555 U.S. 1204 (2009); *see also United States v. Rogers*, 474 F. App'x 463 (7th Cir. 2012).[7] That is, the Second Circuit has specifically interpreted Fed. R. Evid. 414 as allowing propensity evidence from one charged offense to be used to prove another charged offense.

In *United States v. Seymour*, 468 F.3d 378 (6th Cir. 2006), the court reviewed the legal sufficiency of the evidence. The question before the court was whether there was sufficient evidence of penetration. The court found that the testimony of the victim, combined with the testimony of *unrelated* victims who said they had been penetrated (i.e. propensity), was sufficient to establish guilt. *Id.* at 388. The unrelated victims listed by the court included a charged victim, as well as two

---

[7] The CAAF in *Hills* addressed the 7th Circuit's opinion in *Rogers*, stating that it is a case about severance and joinder of offenses; which it is. *Hills*, 75 M.J. at 354 n.1 (citing *Rogers*, 474 F. App'x at 464-65). However, the logic of the ruling requires that Fed. R. Evid. 413 and 414 be interpreted to allow the use of propensity evidence from one charged offense to prove another. That is, the court found no harm from the joinder of unrelated offenses because spillover *was permissible*.

uncharged victims whose testimony had been introduced under Fed. R. Evid. 413/414.

### c. The Mil. R. Evid. 404(b) Instruction

During trial the trial counsel submitted a proposed instruction on the use of evidence under Mil. R. Evid. 404(b). The military judge invited the defense to propose an alternative instruction. The defense neither objected to the trial counsel's proposed instruction nor took up the military judge's invitation to craft one of their own. The military judge instructed the members that, with regards to evidence admitted to prove four offenses, the members could also consider that evidence for its tendency, "if any" to show appellant's "modus operandi, intent to flirt with teenage girls, intent to gratify his sexual desires, and to prove [appellant's] absence of mistake."

Read in a certain light, the CAAF's opinion in *Hills* could be considered to apply equally to evidence introduced under Mil. R. Evid. 404(b). Here, the military judge instructed the panel that evidence from one charged offense could be considered to prove appellant's "intent to gratify his sexual desires" in other charged offenses. The CAAF's sometimes broad language in *Hills* can be read to sweep both Mil. R. Evid. 404(b) and Mil. R. Evid. 413 into its reasoning. Concerns, for example, about the presumption of innocence being eroded by Mil. R. Evid. 413's application to charged conduct could also be said to apply to Mil. R. Evid. 404(b).

However, we do not believe our superior court intended the reach of *Hills* to go beyond Mil. R. Evid. 413 and 414. Strictly speaking, Mil. R. Evid 404(b) evidence "is not admissible to prove the character of a person in order to show action in conformity therewith." Mil. R. Evid. 404(b). However, even assuming that *Hills* was intended to reach the use of Mil. R. Evid. 404(b) evidence, as there was no objection at trial, we fail to find plain error.

### d. The Mil. R. Evid. 413/414 Instruction

The military judge instructed the panel that they could consider appellant's "propensity or predisposition to engage in sexual assault" with respect to four specifications. Of the four offenses for which propensity evidence was allowed, appellant was convicted of only one—the aggravated sexual contact offense against his daughter. Of the other three specifications of which appellant was acquitted, one alleged appellant had raped a fellow soldier in 1998. The remaining two specifications, which were charged in the alternative, both alleged that appellant had rubbed his penis on the buttocks of one of his soccer players.

10

### 2. How Broad is CAAF's Decision in Hills?

The lengthy discussion above regarding *Hills* is not intended to dispute our superior court's decision in that case, but rather to understand it in context. At times, the CAAF's reasoning in *Hills* can be read narrowly to cover limited circumstances presented in *Hills* where propensity evidence was allowed when all specifications address a single course of conduct. Thus, for example, the court appears to limit its reasoning to the facts of *Hills* when it says "this Court . . . has [never] permitted the use of Mil. R. Evid. 413 or Fed. R. Evid. 413 as a mechanism for admitting evidence of charged conduct to which an accused has pleaded not guilty in order to show a propensity to commit the *very same charged conduct*. *Hills*, 75 M.J. at 354 (emphasis added).[8] Such a reading is consistent with the CAAF decisions in *Schroder* and *Burton*, which the CAAF did not specifically reverse or determine were wrongly decided. A narrow reading is also consistent with the case law from federal circuit courts. Our concurring colleague reads *Hills* narrowly.

However, *and undoubtedly*, *Hills* can also be read broadly. The court's language was, at times, sweeping in scope, unequivocal, and would appear to apply to cases well beyond the facts of *Hills*. The CAAF could have easily resolved *Hills* by stating that propensity has no probative value when the offenses are part of the same course of conduct, thereby resolving the M.R.E. 403 balancing test in favor of the appellant. They did not, and went much further. As noted above, given the small avalanche of cases in the appellate pipeline, whether the narrow or broad reading is correct will have significant effects on cases that appellate courts are likely to address over the next several years.

In weighing these two possible readings, we find the pull of the broad reading to be inescapable. "It is antithetical to the presumption of innocence to suggest that conduct of which an accused is presumed innocent may be used to show a *propensity* to have committed other conduct of which he is presumed innocent." *Hills*, 75 M.J. at 356 (emphasis added). While we would find some dissonance no matter how we interpret *Hills*, that dissonance would be loudest if we read *Hills* as being limited to cases where a propensity instruction is given to cover multiple offenses in a single

---

[8] Also, for example, the court noted the Article 32 investigation had recommended against a court-martial and specifically commented on the investigating officer's analysis of the weight of the evidence. *Hills*, 75 M.J. at 352. Normally, the recommendation of an Article 32 investigation would not have legal relevance on appeal, again perhaps indicating the unusual facts of *Hills*.

course of conduct. Accordingly, we read *Hills* to prohibit, under all circumstances, giving a propensity instruction based on a charged offense.[9]

For purposes of this case, we will therefore apply the broad reading: that propensity evidence may never be used between charged offenses, regardless of how separate and distinct the offenses in time and place. Therefore the instruction given in this case constituted error.[10] Accordingly, the remaining question is one of prejudice.

### *3. Prejudice*

Our superior court's prejudice analysis in *Hills* was focused entirely on the confusing Mil. R. Evid. 413 instructions. That court was "not convinced beyond a reasonable doubt that the conflicting standards of proof and directly contradictory statements about the bearing that one charged offense could have on another did not contribute to the verdict." *Id.* at 358.

We first note the confusing nature of the Mil. R. Evid. 413 instruction used in this case is not limited to cases that involve only charged conduct. As noted earlier,

---

[9] There are two possible exceptions, which as they are not raised by this case, we need not directly address. The first is when Mil. R. Evid. 413 is used for a purpose *other than propensity*. By its own terms, evidence admitted under the rule may be considered "for all purposes for which it is relevant." Mil. R. Evid. 413(a). While most practitioners think of Mil. R. Evid. 413 in terms of propensity, and the CAAF's entire reasoning in *Hills* was focused on propensity, there may be a circumstance where evidence is admitted for some other purpose. Second, the CAAF's reasoning for prohibiting a propensity instruction in *Hills* was based on an erosion of the burden of proof and the presumption of innocence. *Hills*, 75 M.J. at 357. If, in a different case, the military judge instructed the panel that they may only use propensity evidence if they first find an offense proven beyond a reasonable doubt (i.e. not merely a preponderance), it is unclear whether this would be permissible, impermissible, or impermissible but harmless error under *Hills*. *Id.* (distinguishing *People v. Villatoro*, 281 P.3d 390 (Cal. 2012) because the propensity evidence stemmed from a charged offense which *had been* proven beyond a reasonable doubt).

[10] We note appellant did not object to the military judge's instructions. Accordingly, we would review for plain error. We assume without deciding that the instructional error amounted to plain error.

in *Williams* we overturned *DaCosta* due to several problems caused by this instruction.[11] *Williams*, 75 M.J. at 630-31.

However, while the instructions required by *DaCosta* are confusing and require panel members to simultaneously consider different burdens of proof, we do not read *Hills* as determining that they are per se prejudicial error. The *DaCosta* instructions have been used in dozens, if not hundreds, of cases involving both charged and uncharged conduct. *See Schroder*, 65 M.J. at 56 n.4 (noting the requirement set forth in *DaCosta*, 63 M.J. at 583, that the proper use of Mil. R. Evid. 413 evidence requires the military judge to give a *Benchbook* or similar instruction to the members that they may not convict an accused because the accused committed or has a propensity to commit other sexual assault offenses, or use evidence admitted under Mil. R. Evid. 413 as substitute evidence to overcome the government's failure of proof).

In assessing prejudice, we find this case distinguishable from *Hills* for several reasons. First, we note the CAAF has previously found instructions that included propensity stemming from charged offenses to be harmless error. *Schroder*, 65 M.J. at 56-57. As discussed above, while the CAAF found the instruction to be error, the court found it harmless.

Second, we believe the intertwined nature of the conduct in *Hills* was *central* to the court's assessment of prejudice. In *Hills,* where the three specifications of sexual assault were all against the same victim as she passed in and out of consciousness, the court found that giving multiple standards of review for what was essentially one criminal escapade expected too much from the panel. Here, by contrast, the victims were all unrelated and the alleged acts took place over a decade. The danger of confusion was substantially less.

Third, when we look at a specification-by-specification analysis, we are unable to find prejudice to appellant when he was convicted of only one offense. Assessing prejudice stemming from instructions is—by its nature—a specification specific inquiry. In *Hills*, because the offenses all stemmed from a single course of conduct, the court did not conduct a specification-by specification-analysis. Given the intertwined nature of the offenses in *Hills*, such an inquiry would likely have been fruitless. However, in cases such as this one, where the offenses are factually distinct, such an inquiry is appropriate.

---

[11] While the CAAF set aside our decision in *Williams* in light of *Hills*, it was not because they disagreed with our ruling regarding the *DaCosta* instruction. *Hills,* if anything, reaffirms our reasoning in *Williams* that the *DaCosta* instructions are problematic.

Central to our superior court's decision in *Hills* was the concept of the presumption of innocence. In short, the court found it "antithetical" to use propensity evidence from one charged offense to help prove another charged offense. 75 M.J. at 356. Certainly, if under *Hills,* there was a violation of the presumption of innocence as to a specification, that error results in *no prejudice* if the accused is acquitted of *that* specification. In other words, any harm that came from violating the presumption of innocence in a given specification is extinguished by an acquittal of that same specification. So, when the panel acquitted appellant of the three other specifications of sexual assault, any violation of the presumption of innocence as to those specifications resulted in no prejudice.

This limits our analysis to the sole remaining questionable specification, the aggravated sexual contact with appellant's daughter. The evidence that the panel was told to consider included the direct evidence of the offense, as well as propensity evidence from three other alleged sexual assaults. If the three other sexual assaults were uncharged, there would be no *Hills* issue, and the panel could have considered all the evidence to include the propensity evidence. Instead, the other three offenses resulted in an acquittal. Thus, the question is, when weighing the evidence as to Specification 1 of Charge I, is it legally relevant whether the other offenses were uncharged or resulted in an acquittal? Put differently, what is the prejudice *as to Specification 1 of Charge I* from the fact that the other Mil. R. Evid. 413 evidence was charged, but resulted in an acquittal? If an acquittal of the three other specifications extinguished any prejudice *as to those specifications*, does it nonetheless effect the remaining specification?

We are unable to articulate any prejudice.[12] Or stated differently, if propensity evidence is permissible (i.e. non-prejudicial) had the other offenses been uncharged, we find no legal difference as to *this specification* when the propensity evidence stems from *unrelated* offenses that resulted in an acquittal.

Fourth, we are convinced beyond a reasonable doubt that even if no propensity instruction had been given, the results in this trial would have been the same. We note that in performing our factual sufficiency review we are entirely

---

[12] We are aware that in *Hills* the accused was similarly only convicted of a single specification. 75 M.J. at 352. However, and again, *Hills* had the unusual circumstance that a propensity instruction was given for a single course of conduct that occurred over a short time period. *Id.* In such a case, when the offenses run together, the danger the panel misapplies the burden of proof is significantly greater. Here, by contrast, the Specification 1 of Charge I was factually unrelated to the other offenses.

convinced of appellant's guilt without resorting to any propensity evidence.[13]  More on point, we do not believe the propensity instruction in this case had any palpable effect on the panel's deliberations.  We make this latter determination not so much because the evidence that supported appellant's conviction was strong (though we find appellant's daughter's testimony to be credible),[14] but more because the evidence in support of the offenses that the panel acquitted appellant of was quite weak.  The likelihood of prejudice from propensity evidence is greatest when the evidence is solid and credible.  In other words, weak evidence offered to show propensity poses less danger of contributing to the verdict.  If the panel did not believe the other offenses happened, there is little danger they would rely on an impermissible propensity inference.

Finally, but least importantly, we find, to the extent that the military judge's instructions were confusing, any confusion in this case was harmless.  The Mil. R. Evid. 413 instruction included a specific instruction that the panel was not to consider proof of one sexual assault as proof of other sexual assaults:

> The accused may be convicted of an alleged offense only if the prosecution has proven each and every element beyond a reasonable doubt.  Each offense must stand on its own, and proof of one offense carries no inference that the accused is guilty of any other offense.  *In other words, proof of one sexual assault creates no inference that the accused is guilty of any other sexual assault.*  However, it may demonstrate that accused has a propensity to commit that type of offense.  The prosecution's burden of proof to establish the accused's guilt beyond a reasonable doubt remains as to each and every element of each offense charged.  Proof of one charged offense carries with it no inference that the accused is guilty of any other charged offense.

(emphasis added).  As the italicized language indicates, the panel here was specifically instructed that proof of one sexual assault carried no inference that appellant committed any other sexual assaults.

---

[13] We do not mean to imply as a matter of logic that, because we find the specification factually sufficient, any error was harmless beyond a reasonable doubt.

[14] With regard to the weight of the evidence, we note that the defense's attempt at trying to discredit the daughter's testimony had the opposite of the intended effect.

One may reasonably wonder the point of the instruction. The military judge prohibited any "inference" that the accused committed one sexual assault because he committed other sexual assaults. In other words, the panel was instructed they were not allowed to give propensity any legal weight. The net effect of the instruction was to follow Mil. R. Evid. 413 (as understood by the judge at the time), but then instruct the panel in a manner that gave it no weight.

Accordingly, we find any confusion in the military judge's instruction was harmless beyond a reasonable doubt.

## B. The Preemption Doctrine

The five specifications of Charge III all alleged appellant engaged in sexually explicit communications with the girls on his soccer team. Specification 3, however, was the only offense that alleged appellant's conduct constituted the offense of "indecent language." *See Manual for Courts-Martial, United States* (2008 ed.) [hereinafter *MCM*, 2008] pt. IV, ¶ 89. The other four offenses alleged appellant's speech constituted a general disorder. Appellant alleges the court-martial lacked subject matter jurisdiction over Specifications 1, 4, and 5 of Charge III because of the preemption doctrine.[15] Specifications 1, 4, and 5 of Charge III all alleged appellant communicated with children using sexually explicit language, but did not allege that appellant's speech was "indecent."[16] As the government appeared to concede at trial, this charging decision was intentional.

---

[15] In his brief, appellant only argues that Specifications 1, 4, and 5 of Charge III should be dismissed under this theory. However, Specification 2 would equally fall under appellant's reasoning.

[16] While discussing panel instructions with the military judge, civilian defense counsel raised the issue of whether the general disorder offenses were constitutionally problematic in that they criminalized appellant's speech in violation of the First Amendment. The civilian defense counsel requested an instruction to the panel on the First Amendment. The military judge correctly saw this request not as an instructional issue, but rather as a motion to dismiss. After noting that appellant had not filed any motion, the military judge invited the civilian defense counsel to provide her with "whatever you can find that supports your position on First Amendment grounds in relation to these Article 134 offenses." She then stated that she would consider whatever he submitted. It appears appellant did not follow up on the military judge's invitation.

If raised, the relevant question would be to what extent a statement that satisfied the terminal elements of Article 134, UCMJ, nonetheless is protected by the First

(continued . . .)

Appellant argues the general disorders were preempted by the enumerated Article 134 offense of "Indecent Language." Appellant further argues as the error is "jurisdictional," then appellant's failure to object at trial is of no consequence, as matters of jurisdiction may be raised at any stage. R.C.M. 905(e). We disagree that the preemption doctrine (as appellant uses the term) is jurisdictional. We further disagree that the offenses were preempted.

### 1. Jurisdiction and the Preemption Doctrine

Both sides agree the preemption doctrine is "jurisdictional" and, therefore, any failure to raise it at trial did not forfeit the issue. As we disagree, we will discuss the matter in some depth.

Both appellant and the government rely on *United States v. Robbins*, 52 M.J. 159 (C.A.A.F. 1999), for the proposition that the preemption doctrine is jurisdictional. In *Robbins*, the accused had been convicted of violating an Ohio law that had been assimilated into federal law by the Assimilative Crimes Act, 18 U.S.C. § 33 (ACA), and charged as a Clause 3 violation of Article 134, UCMJ. *MCM*, 2012 ed., pt. IV, ¶ 60.c.(4).

"The federal Assimilative Crimes Act (ACA) assimilates into federal law, and thereby makes applicable on federal enclaves such as Army bases, certain criminal laws of the State in which the enclave is located." *Lewis v. United States*, 523 U.S. 155, 158 (1998). "The ACA's basic purpose is one of borrowing state law to fill gaps in the federal criminal law that applies on federal enclaves." *Id.* at 160. One element of the ACA is that the conduct in question has *not* been "made punishable by any enactment of Congress. . . ." 18 U.S.C. § 13(a) (2012). In other words, as a gap-filling statute, it does not apply if there is already a federal law that covers the offense. Thus, the ACA has *as an element of the offense* that the conduct is not otherwise proscribed by federal law. That is, the ACA has as an element a "preemption" issue. If there is already a federal law on point (to include enumerated offenses in the UCMJ), the ACA is not applicable. However, as an element of the offense, the preemption issue is unique to the ACA. Reading *Robbins* in this light

---

(. . . continued)

Amendment. However, as appellant did not preserve this issue at trial (and did not raise it on appeal), we are presented with an entirely undeveloped record in which neither party attempted to address the issue. The burden is on appellant to establish plain error. *United States v. Parker*, 71 M.J. 594, 621 (C.A.A.F. 2012); *see also United States v. Priest*, 45 C.M.R. 338, 343-44 (C.M.A. 1972) (discussing application of the First Amendment to Article 134, UCMJ); *United States v. Rapert*, 75 M.J. 164, 171 (C.A.A.F. 2016) (applying *Priest*).

reveals the CAAF's opinion regarding jurisdiction was limited to a statutory interpretation of the ACA.

> We hold that the preemption issue was not waived by appellant's guilty plea. . . . R.C.M. 905(e) provides that lack of jurisdiction . . . [is] not waived by failure to raise the issue at trial. *In this case, the issue relates to subject-matter jurisdiction. If the offense was improperly assimilated, it was not cognizable by a court-martial.* Thus, we hold that the preemption issue was not waived by the guilty plea or appellant's failure to raise it at trial.

*Robbins*, 52 M.J. at 160 (emphasis added).[17] As the italicized text indicates, the "jurisdictional" issue in *Robbins* was limited to the improper assimilation of an offense under the ACA. In other words, the holding in *Robbins* is based on the statutory interpretation of the ACA not an interpretation of Article 134. As an issue of statutory interpretation, the CAAF's holding is limited to the statute it interpreted.

Admittedly, the court in *Robbins*, in other parts of the opinion, appears to have discussed the "preemption doctrine" interchangeably with the preemption "element" of the ACA. And, certainly some of the same issues are at play. The similarity of the terms, the similar phrasing of the statutes, and the similar policy concerns may breed some confusion. However, we do not believe the CAAF intended to find that the preemption doctrine was jurisdictional outside of the ACA for a couple of reasons.

First, since its inception, the preemption doctrine has been based on prudential concerns, not as a matter of statutory interpretation. *See United States v. Norris*, 2 U.S.C.M.A. 236, 8 C.M.R 36 (1953); *United States v. Herndon*, 15 U.S.C.M.A. 510, 36 C.M.R. 8 (1965) (referring to the opening phrase of Article 134 as a "disclaiming phrase"); *but see United States v. McCormick*, 12 U.S.C.M.A. 26, 30 C.M.R. 26 (1960). For example, in *United States v. Gomez*, 46 M.J. 241, 246 (C.A.A.F. 1997) the CAAF found that the offense of assault with intent to commit rape was not preempted, but only because of the doctrine of *stare decisis*.

---

[17] We note that the CAAF's opinion in *Robbins* equated the term "jurisdiction" in R.C.M. 905(e) with "subject matter jurisdiction." The drafter's analysis indicates that the rule was intended to refer to the jurisdiction of the court. *See MCM,* App. 22, Analysis of R.C.M. 905(e), A21-54 (referring to paragraph 67b of the 1969 manual and Fed. R. Crim. Proc. 12).

Second, the CAAF has on occasion applied the preemption doctrine such that one Article 134 offense preempts another Article 134 offense. In *United States v. Taylor*, the CAAF held the Article 134 offense of solicitation preempted a general disorder offense. 23 M.J. 314 (C.M.A. 1987); *see also United States v. Manos,* 8 U.S.C.M.A. 734, 25 C.M.R. 238 (1958); *United States v. Downard,* 6 U.S.C.M.A. 538, 20 C.M.R. 254 (1955). While it is unlikely that an intra-Article 134 application of the preemption doctrine is valid given subsequent precedents, (discussed below), it weighs against the preemption doctrine being historically viewed as a matter of subject matter jurisdiction. Article 134 cannot *lack* subject matter jurisdiction over conduct because it is preempted by an Article 134 offense that *has* subject matter jurisdiction over the conduct. In other words, if certain conduct is prohibited by clause 1 or 2 of Article 134, then Article 134 conveys subject matter jurisdiction over that conduct, which is what subject matter jurisdiction is. Which is not to say the preemption doctrine is not good policy. For prudential, prophylactic, and perhaps other purposes, the doctrine–a child of both case law and Presidential rule[18]–limits the scope of Article 134 for good reason.

Similarly, at least as applied here, appellant's argument regarding subject matter jurisdiction is circular. Appellant's argument is that the Article 134 offense of indecent language preempts the Article 134 general disorders of which he was convicted. That is, appellant's argument is that one Article 134 offense preempts another Article 134 offense. It simply cannot follow that an Article 134 offense *lacks* subject matter jurisdiction over a general disorder offense because the Article 134 offense *has* subject matter jurisdiction over the offense of indecent language.

Thus, we find the preemption doctrine, at least when applied outside of the ACA, is not a question of subject matter jurisdiction. Accordingly, we disagree with

---

[18] The President's explanation of the preemption doctrine is somewhat unique in the *MCM*. It states "The preemption doctrine prohibits application of Article 134 to conduct covered by Articles 80 through 132." *MCM*, 2012, pt. IV, ¶ 60.c.(5)(a). Notably, the rule is *descriptive*, not *proscriptive.* That is, by its own terms, it does not prohibit anything, but rather states that "the preemption doctrine prohibits. . . ." It refers to an authority (presumably case law) outside of itself. For example, written as a proscriptive rule, it could have said "Article 134 shall not be applied to conduct covered by Articles 80 through 132." The CAAF has described the President's explanation of the preemption doctrine as "merely codif[ying] existing military law." *United States v. McGuinness*, 35 M.J. 149, 151 (C.A.A.F. 1992). In *McGuinness*, the CAAF rejected the appellant's claim that the President's rule created "a new preemption doctrine, more stringent than the previous common-law doctrine." *Id.* at 152.

appellant's contention that issues regarding the preemption doctrine were preserved because of a lack of subject matter jurisdiction.

In this regard, we note that we are not in agreement with some of our sister courts. In *United States v. Jones*, the Air Force court stated that the preemption doctrine was jurisdictional, citing *Robbins*. 66 M.J. 704, 706 (A.F. Ct. Crim. App. 2008); *see also United States v. Costianes*, No. ACM 38868, 2016 CCA LEXIS 391, at *3 (A.F. Ct. Crim. App. 30 Jun. 2016); *United States v. Taylor*, 2007 CCA LEXIS 176 (N.M. Ct. Crim. App. 23 May 2007) (unpub.). However, each of these cases involved applying the CAAF's interpretation of the ACA in *Robbins* to cases not involving the ACA. Accordingly, we find them unpersuasive.

### 2. Were the General Disorders Preempted?

Although we disagree with appellant's contention that the preemption doctrine is jurisdictional, we will nonetheless address the issue of whether the general disorder offenses of which he was convicted were, in fact, preempted.

> Preemption applies only if two questions are answered in the affirmative:
>
> The primary question is whether Congress intended to limit prosecution for wrongful conduct within a particular area or field to offenses defined in specific articles of the Code; the secondary question is whether the offense charged is composed of a residuum of elements of a specific offense and asserted to be a violation of either Articles 133 or 134, which, because of their sweep, are commonly described as the general articles.

*McGuiness*, 35 M.J. at 151-52 (citing *United States v. Wright*, 5 M.J. 106, 110-11 (C.M.A. 1978)). We answer the first question in the negative, and therefore reject appellant's preemption claim.

### a. United States v. Jones & United States v. Fosler

In *United States v. Rodriguez*, we addressed "'the viability of the preemption doctrine after the decision in *United States v. Fosler* [70 M.J. 225 (C.A.A.F. 2011)]' and *United States v. Jones*, 68 M.J. 465 (C.A.A.F. 2010)." ARMY 20130577, 2016 CCA LEXIS 145, at *3 (Army Ct. Crim. App. 7 Mar. 2016). We found the preemption doctrine to have emerged altered, but viable, by application of these two cases. We continue to so hold.

As noted above, under *McGuiness,* to trigger the preemption doctrine the Article 134 offense must be composed of "a residuum" of the enumerated offense. 35 M.J. at 152. In *Rodriguez* we found that as the Article 134 "terminal element is not present in the enumerated offenses . . . an Article 134 offense will rarely be, if ever, a lesser included or residuum offense." *Id*. at *4. It is worth briefly unpacking our reasoning in *Rodriguez.*

Historically, and when the preemption doctrine was developed, every enumerated offense (Articles 80-132) was presumed to include as an inherent element that the accused's conduct was prejudicial to good order and discipline or service discrediting. *See e.g. United States v. Foster*, 40 M.J. 140 (C.A.A.F. 1994). Thus, Article 134 offenses were often lesser-included offenses of Articles 80-132:

> [W]e hold simply that, in military jurisprudence, the term "necessarily included" in Article 79 encompasses derivative offenses under Article 134. *See United States v. Doss*, 15 M.J. 409, 415 (C.M.A. 1983) (Cook, J., concurring in the result) (prejudice to good order and discipline is a characteristic of all offenses under the Uniform Code; "it is merely a matter of historical accident that some offenses came to be assigned separate articles without that element, while others continue to be charged with the element under the general article.").

> Thus we hold that an offense arising under the general article may, depending upon the facts of the case, stand either as a greater or lesser offense of an offense arising under an enumerated article.

*Id*. at 143. However, the CAAF explicitly overturned this reasoning in *Jones*. 68 M.J. at 470. After *Jones* and the equally important decision in *Fosler*, it was clear the elements of Article 134 *must be both alleged and proved.*

Accordingly, post-*Jones,* no Article 134 offense has been found to be a lesser included offense of an enumerated offense. *See e.g. United States v. McMurrin*, 70 M.J. 15 (C.A.A.F. 2010) (negligent homicide not a lesser-included offense of manslaughter). The flipside of that same coin is that it is difficult for an Article 134 offense to be composed of a "residuum" of an enumerated offense. Every Article 134 offense has an element that the enumerated offense lacks. Hence our skepticism

in *Rodriguez* that "an Article 134 offense will rarely be, if ever, a lesser-included or residuum offense." *Rodriguez*, 2016 CCA LEXIS 145, at *3.[19]

Thus, while the preemption doctrine continues to be good law, its applicability has been significantly changed by intervening case law. In his dissent in *Jones*, Judge Baker predicted this issue by stating the *Jones* decision "eliminated" the issues of multiplicity (as the elements would no longer align) and preemption. *Jones,* 68 M.J. at 474 n.2 (Baker, J., dissenting). While we do not find the preemption doctrine has been "eliminated" as Judge Baker suggested, the scope of the doctrine must be read in the light of the CAAF's decisions in *Jones* and *Fosler*.

*3. Preemption as Applied to this Case*

Applying the *McGuiness* test to this case, it is clear appellant's argument falls short. Congress did not intend to occupy the field with the offense of indecent language. Congress has not spoken on the matter one way or the other. Rather it is the President who has defined the offense of indecent language. We cannot equate the President's enumeration of indecent language as being the same as an enactment by Congress for several reasons.

First, when the President lists elements of an offense under Article 134 the President does not create a substantive criminal offense, but simply provides "guidance to judge advocates under his command regarding potential violations of the article" by "merely indicating various circumstances in which the elements of Article 134, UCMJ could be met." *Jones*, 68 M.J. at 471-72; *Fosler*, 70 M.J. at 231 ("[T]he President does not have the authority to decide questions of substantive criminal law."). Accordingly, as the President cannot create a new offense, the enumeration of an offense under Article 134 cannot preempt another Article 134 offense under *McGuiness*.

Second, the President's explanation of the preemption doctrine states in its clear terms that its applicability is limited to Articles 80-132. *MCM*, 2012, pt. IV, ¶ 60.c.(5).

Third, the overwhelming majority of case law has limited the scope of the preemption doctrine to Articles 80-132. *See McCormick*, 12 U.S.C.M.A. at 28, 30 C.M.R. at 28 (a simple assault and battery under Article 128, UCMJ may not be

---

[19] A holistic view may be that the interests the preemption doctrine once sought to address are now first addressed by reinforced notions of multiplicity, unreasonable multiplication of charges, and increased emphasis on notice and proof when it comes to Article 134 offenses. *See Quiroz*, 55 M.J. at 338.

converted to an Article 134 offense of battery of a child by adding an age element); *United States v. Marcelle*, 2015 CCA LEXIS 22, *5 (Army Ct. Crim. App. 26 Jan. 2015 (sum. disp.) (false official statement, covered by Article 107, UCMJ, improperly charged under Article 134); *United States v. Byard*, 29 M.J. 803 (A.C.M.R. 1989) (perjury, in violation of Article 131, UCMJ, improperly charged as false swearing under Article 134, UCMJ); *but see Taylor*, 23 M.J. 314; *Manos,* 8 U.S.C.M.A. 734, 25 C.M.R. 238; *Downard,* 6 U.S.C.M.A. 538, 20 C.M.R. 254.

Fourth, applying the preemption doctrine internally to Article 134 would have serious ramifications regarding the future application of Article 134. Consider, for example, our sister court's recent decision in *United States v. Hackler*, 75 M.J. 648 (N-M. Ct. Crim. App. 2016). In that case, the court faced an equal protection challenge to a Article 134 offense of sexual misconduct. There, the appellant complained that by its own terms, the offense was discriminatory as it only applied to heterosexual sexual intercourse. *Id.* at 655. However, the court found no equal protection problem as a homosexual sexual act, although not listed by the President, would be similarly punishable under Article 134. *Id.* at 656*.* The *Hackler* court's reasoning would have failed if the enumeration of one offense (applying only to heterosexual sex) would have preempted the offense as applied to homosexual sex.

Accordingly, appellant's general disorder offenses under Article 134 were not preempted by the Article 134 offense of indecent language.

## *C. Interview of Witnesses*

Near the middle of the trial, in an Article 39(a), UCMJ, session, the government complained to the military judge that several of the defense witnesses refused to be interviewed by the trial counsel. The military judge ruled that the defense witnesses would not be allowed to testify unless they first agreed to be interviewed by the trial counsel. The trial counsel first addressed the accused's wife:

> TC: . . . I'd ask that she not be able to testify until she's willing to talk to me.
>
> MJ: Okay.
>
> TC: The second witness has not returned my phone calls for months from the defense. I just ask that [the defense] not be able to call those until I have a change to talk to them.
>
> MJ: Well, of course. Thanks for bringing that to my attention . . . [Addressing defense] If you want them to be

> witnesses, they will submit to interviews with the
> government, or they just won't testify.  So that's up to the
> witnesses and you.
>
> [. . .]
>
> TC: . . . And, Your Honor, I'm not blaming the defense in
> any way.
>
> MJ: I'm sure.
>
> TC: And I don't think it has anything to do with them.  I
> just want to make sure the court knows . . .

Although not raised by appellant, we find the military judge erred when she conditioned the testimony of fact witnesses on subjecting themselves to an interview by opposing counsel.[20]  We find no authority for a military judge to order an "interview" of a civilian lay witness; and absent findings of misconduct, no authority to bar the testimony of such a witness for failing to submit to an interview.

Article 46, UCMJ governs compulsory process in courts-martial and states that "[p]rocess issued in court-martial cases to compel witnesses *to appear and testify* and to compel the production of other evidence shall be similar to that which courts of the United States having criminal jurisdiction may lawfully issue . . . ." 10 U.S.C. § 846 (2012) (emphasis added).  In other words, by its own terms compulsory process is limited to producing witnesses to "appear and testify" and does not include a requirement that the witness first agree to be interviewed.  Additionally, a military court cannot exercise greater authority in this area than the "courts of the United States."

While Article 46, UCMJ, also states the "trial counsel, the defense counsel, and the court-martial shall have equal opportunity to obtain witnesses and other evidence" we do not believe this can serve as a basis to compel interviews.  First, the language specifically limits itself to the ability to "obtain witnesses."  Second, the provisions in Article 46, UCMJ, apply equally to the trial counsel, the defense

---

[20] We note, for example, that the Rules of Professional Conduct would *not* prohibit the defense counsel from advising a client's family member "to refrain from voluntarily giving relevant information" to the trial counsel. *See* Army Reg. 27-26, Legal Services:  Rules of Professional Conduct for Lawyers, R. 3.4 ("Fairness to Opposing Party and Counsel") (providing an exception when "the person is a relative . . . of a client") (1 May 1992).

counsel, *and the court-martial.* That is, whatever the parties' rights under the first phrase of Article 46, it is shared by the panel members. *See* UCMJ, art. 16, 10 U.S.C. § 816 (2012) (definition of a court-martial). While the court-martial may obtain witnesses to testify, the panel members cannot conduct pretrial interviews of witnesses.

More broadly, outside the specific authority conveyed by the UCMJ, a military judge's authority over civilian participants in a court-martial is limited. We can find no inherent authority for a military judge to compel a civilian witness to submit to an interview. Nor do we find any authority to condition either party's evidence on a witness's willingness to voluntarily submit to a voluntary pretrial interview.

The counsel, like the military judge, lack the authority to compel a civilian's cooperation in pretrial interviews. A witness may refuse to be interviewed notwithstanding a counsel's desperate pleas. Absent compulsory process, a witness maintains the free will to determine the degree to which he or she voluntarily participates in the court-martial.[21] Here, the military judge's order could have led to key defense witnesses not being allowed to testify because of circumstances that were beyond the control of the defense or government.

Notably, this case does not involve an allegation of misconduct. There was no allegation that appellant or his attorneys had improperly impeded the trial counsel's access to a witness. In fact, the trial counsel specifically disavowed such concerns.

When it would facilitate a smooth and efficient trial, a military judge may certainly encourage a witnesses to be interviewed voluntarily. Such encouragement coming from a robed judicial officer may often be effective. A military judge, as a matter of discretion, may also recess the court to facilitate such cooperation. *See* UCMJ, art. 40, 10 U.S.C. § 840 (2012). However, the military judge may not exclude admissible relevant evidence because a witness has chosen not to return the trial counsel's phone calls.

While we find the military judge's actions to be error, we nonetheless determine appellant is not entitled to any relief. First, appellant's failure to object

---

[21] We note that R.C.M. 701(e) provides that each party have the "equal opportunity" to interview witnesses. The trial counsel was provided equal opportunity to interview the defense witnesses when he called them and asked to speak to them. That they may not have accepted or returned his calls does not mean he was not provided the *opportunity* for an interview.

to the military judge's ruling forfeited the issue absent plain error. Second, assuming without deciding that the military judge committed plain error, the defense was not prevented from calling any witnesses, and in fact, the defense did call the witnesses in question: Adrian Carreon and the accused's wife. Accordingly, we can detect no prejudice to appellant's ability to present his case. *See* UCMJ, art. 59(a), 10 U.S.C. § 859(a) (2012).

### D. *Unreasonable Multiplication of Charges & Multiplicity*

The government's charging in this case was unique; although in a way that would not warrant emulation. The charges were written broadly, with overlapping conduct, and with some specifications being entirely subsumed by other specifications. Appellant objected at trial preserving the error. On appeal, the government correctly concedes several errors. In short, the charge sheet is in need of some significant appellate attention. We review issues of multiplicity in conformance to the decision in *Blockburger v. United States*, 284 U.S. 299 (1932). Our decisions regarding unreasonable multiplication of charges are similarly guided by the considerations set forth by our superior court in *United States v. Quiroz*, 55 M.J. 334, 338-39 (C.A.A.F. 2001).

### *1. The Specification of Additional Charge I; Specifications 1 and 2 of Additional Charge II.*

The specifications of the additional charges all addressed the incident where appellant cornered his niece in the hotel room, told her to undress, and tried to unbutton her pants. The Specification of Additional Charge I alleges an assault consummated by a battery on a child. Specification 1 of Additional Charge II alleges an indecent assault. Specification 2 of Additional Charge II alleges an indecent act with a child.

Appellant alleges the offenses are unreasonably multiplied. The government concedes that the offenses were charged in the alternative and asks that we conditionally dismiss all but Specification 2 of Additional Charge II. We agree with both parties that the offenses are unreasonably multiplied and will conditionally dismiss the Specification of Additional Charge I and Specification 1 of Additional Charge II.

### *2. Specifications 1 and 2 of Charge II*

Specifications 1 and 2 of Charge II both alleged an assault consummated by a battery of a child. Both specifications alleged the same victim, same location, and that the offenses happened between 1 October 2007 and 23 July 2009. The only difference between the two specifications is that Specification 1 alleged that

appellant touched the child "on her thigh with his hand," whereas Specification 2 alleged a touching "on the body with his hands."

In his third assignment of error, appellant argues the offenses are multiplicious because Specification 2 subsumes Specification 1. That is, every touching "on the thigh" is also a touching "on the body." The government responds that the offenses are not multiplicious because they are aimed at different instances of conduct.

In support of their position, appellee does not cite to evidence introduced at trial, but rather cites to the appellate exhibit that contains the government's response to the motion for unreasonable multiplication of charges. The motion response simply repeats the claim that the specifications are directed at different conduct without explanation.

Hunting through the record, we are able to find separate instances of offensive touching between this victim and appellant that *could* form the basis of a separate battery specification. However, given the lack of clarity in the charging, the motion response at trial, the fact that appellant properly preserved the issue for appeal, and the lack of specificity in appellee's brief, we agree with appellant that one of the specifications needs to be dismissed. While there are several paths that lead to the same result, we will agree with appellant's assigned error that the offenses are multiplicious as one offense subsumes the other. Accordingly, we will dismiss Specification 2 of Charge II.

### 3. Specifications 1-5 of Charge III

Specification 1, 3, 4, and 5 of Charge III alleged violations of Article 134 for the sexual comments that appellant made to the girls on his soccer team. Each alleged a specific victim and also alleged that appellant had made sexually inappropriate or indecent statements, including commenting on their "nice body" or "nice ass," asking about their sexual experiences, or discussing appellant's experience as a "swinger."

Specification 2 of Charge III also alleged that appellant made inappropriate comments to children, but was substantially less specific. The specification did not allege any specific victim, but instead alleged that appellant was directed at "females under the age of 18." The alleged misconduct was asking these girls "to be his friend of Facebook, send messages on Facebook . . . and make inappropriate comments . . . without their parents [sic] knowledge or permission . . . ."

In his eighth assignment of error, appellant alleges that Specification 2 is multiplicious with the other four specifications because it is a "catch-all" offense that encompasses the conduct contained in Specifications 1, 3, 4, and 5.[22]  The government responds, without citation to the record, that Specification 2 addresses distinct conduct.

For the same reasons as discussed in regards to Specifications 1 and 2 of Charge II, we agree with appellant and will dismiss Specification 2 of Charge III.

### *4. Specifications 3 and 4 of Charge III*

Specification 3 of Charge III alleged a violation of Article 134 when the accused used indecent language when he told one of his teenage soccer players that she had "a nice ass."  Specification 4 of Charge III charged the same misconduct, but alleged a general disorder.  That is, Specification 4 omitted the element that the accused's language was "indecent."

In his first assignment of error, appellant argues that the offenses are unreasonably multiplied.  The government concedes that they were charged in the alternative and asks us to conditionally dismiss specification 4 of Charge III.  *United States v. Elespuru*, 73 M.J. 326, 329 (C.A.A.F. 2014) ("[W]hen a 'panel return[s] guilty findings for both specifications and it was agreed that these specifications were charged for exigencies of proof, it [is] incumbent' either to consolidate or dismiss a specification." (quoting *United States v. Mayberry*, 72 M.J. 467, 467-68 (C.A.A.F. 2013)).  We find the charges to be multiplicious, and will accordingly dismiss (without condition) Specification 4 of Charge III.

## CONCLUSION

Specification 2 of Charge II, and Specifications 2 and 4 of Charge III are dismissed.  The Specification of the Additional Charge and Specification 1 of Additional Charge II are conditionally dismissed. *See United States v. Briton*, 47 M.J. 195, 203 (C.A.A.F. 1997) (J. Effron concurring); *United States v. Hines*, 75 M.J. __, 2016 CCA LEXIS 439, *7-8 n.4 (Army. Ct. Crim. App. 27 Jul. 2016); *United States v. Woods*, 21 M.J. 856, 876 (A.C.M.R. 1986).  Our dismissal is conditional on the Specification of the Additional Charge and Specification 1 of

---

[22] In appellant's seventh assignment of error he asserts Specification 2 of Charge III fails to state an offense because asking someone under the age of eighteen to be friends on Facebook is not criminal, and that making "inappropriate comments" is too vague to constitute an offense.  Our dismissal of this specification moots this issue.

Additional Charge II surviving the "final judgment" as to the legality of the proceedings. *See* Article 71(c)(1), UCMJ (defining final judgment as to the legality of the proceedings). The remaining findings of guilty are AFFIRMED.

We are able to reassess the sentence on the basis of the errors noted and do so after conducting a thorough analysis of the totality of the circumstances presented by appellant's case and in accordance with the principles articulated by our superior court in *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013) and *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986).

In evaluating the *Winckelmann* factors, we first note that our action in this case does not significantly alter the penalty landscape.[23] The gravamen of the criminal conduct within the original offenses remains substantially the same, and the specifications dismissed by our decision today either involve an offense charged in the alternative, involve multiple charges for essentially the same act, or involve conduct encompassed in another charge. In other words, the panel sentenced appellant for essentially the same conduct encompassed in the findings of guilty we have affirmed. The remaining offenses capture the gravamen, and the seriousness, of appellant's actions. Finally, we have the familiarity and experience with the remaining offenses and can reliably determine what sentence would have been imposed at trial. We are confident the panel would have returned a sentence to confinement of at least seven years and eight months without the specifications we today dismiss.

Reassessing the sentence based on the noted errors and the entire record, we AFFIRM the only so much of the sentence as applies to confinement for seven years and eight months, forfeiture of all pay and allowances, and a reduction to the grade of E-1. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings and sentence set aside by this decision are ordered restored. *See* UCMJ arts. 58a(b), 58b(c), and 75(a).

Judge FEBBO concurs.

---

[23] At trial, the military judge merged Specifications 3 and 4 of Charge III and merged the Specification of Additional Charge I and Specifications 1 and 2 of Additional Charge II for sentencing. Consequently, our action on the additional charges, as well as Specification 4 of Charge III do not change the penalty landscape. Our action on Specification 2 of Charge III, however, slightly reduces the maximum sentence.

Senior Judge MULLIGAN, concurring:

I concur in the result but write separately as to my colleagues' treatment of our superior court's decision in *United States v. Hills*, 75 M.J. 350 (C.A.A.F. 2016). I read *Hills* narrowly to preclude "the use of [Mil. R. Evid.] 413 or Fed. R. Evid. 413 as a mechanism for admitting evidence of charged conduct to which an accused has pleaded not guilty in order to show propensity to commit *the very same charged conduct.*" *Id*. at 354 (emphasis added). The criminal conduct which led to charges in *Hills* involved the same victim; on the same night; in the same room. *Hills* should not be read sweepingly to preclude evidence of other offenses, charged or uncharged, on different victims, at different times and locations.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court