# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, FEBBO, and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Staff Sergeant ANTONIO T. MOORE**
**United States Army, Appellant**

ARMY 20140875

Headquarters, 25th Infantry Division
Gregory A. Gross, Military Judge (arraignment and motions hearing)
Andrew J. Glass and James W. Herring, Jr., Military Judges (motions hearing)
Gregory A. Gross, Military Judge (trial)
Colonel Mark A. Bridges, Staff Judge Advocate (pretrial)
Colonel William D. Smoot, Staff Judge Advocate (post-trial)

For Appellant: Captain Matthew L. Jalandoni, JA (argued),[1] Lieutenant Colonel Jonathan F. Potter, JA; Major Andres Vazquez, Jr., JA; Captain Matthew L. Jalandoni (on brief); Major Andres Vazquez, Jr., JA; Captain Matthew L. Jalandoni (on reply brief).

For Appellee: Captain Austin L. Fenwick, JA (argued); Colonel Mark H. Sydenham, JA; Lieutenant Colonel A.G. Courie III, JA; Major Michael E. Korte, JA; Captain Austin L. Fenwick, JA (on brief).

23 March 2017

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

WOLFE, Judge:

Appellant asks that we set aside his convictions for the sexual assault of his stepdaughter in light of our superior court's decision in *United States v. Hills*, 75 M.J. 350 (C.A.A.F. 2016). The military judge gave an instruction under Military Rule of Evidence [hereinafter Mil. R. Evid.] 413 that allowed the panel to consider appellant's propensity to commit the charged offenses based on the panel's

---

[1] We heard oral argument on this case on 13 December 2016.

assessment of the evidence with respect to six other charged offenses. In accordance with this court's recent decision in *United States v. Guardardo*, 75 M.J. 889 (Army Ct. Crim. App. 2016), we find this instruction to have been error. In assessing the prejudice to appellant, we arrive at mixed results. With regards to the six specifications at issue, we find the error was harmless beyond a reasonable doubt with respect to only one of the offenses. Accordingly, we set aside the findings of five specifications.[2]

## BACKGROUND

A panel of officers sitting as a general court-martial convicted appellant, contrary to his pleas, of two specifications of violating a no contact order given by a superior commissioned officer, six specifications of sexually assaulting his stepdaughter, AR, and one specification of assault consummated by battery against AR, in violation of Articles 90, 120, and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 890, 920, 928 (2006 & Supp. V 2012, 2012) [hereinafter UCMJ]. The panel acquitted appellant, *inter alia*, of two specifications under Article 120 which alleged appellant raped AR. The panel sentenced appellant to a dishonorable discharge, confinement for twenty years, forfeiture of all pay and allowances, and a reduction to the grade of E-1. The convening authority approved the sentence as adjudged.[3]

### A. The Sexual Misconduct Charges

The charges preferred by the government alleged appellant was having sex with his stepdaughter AR beginning on 1 October 2004 and lasting through 16 July 2013. The alleged misconduct was broken into eight specifications. The eight specifications accounted for the change in AR's age when she turned sixteen, the change in location of the offenses because of appellant's occasional reassignment, a break in the alleged misconduct caused by appellant's overseas deployment, and the amendments to Article 120 that took effect in October 2007 and June 2012. Of the

---

[2] Appellant also asserts the government's dilatory post-trial processing warrants relief. Additionally, appellant personally asserts several assignments of error pursuant to *United Stated v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). Having duly considered these additional claims, we find they lack merit.

[3] In a separate court-martial, that we do not address here, appellant pleaded guilty to one specification of false official statement for denying he had sex with AR and three specifications of violating Georgia incest laws. For these offenses, the military judge sentenced appellant to a bad-conduct discharge and two years confinement.

eight specifications, the panel acquitted appellant of the offenses that were alleged to have occurred when AR was under the age of sixteen.

*B. Evidence of the Offenses.*

Prior to appellant joining the Army, AR, then nine years old, made an allegation that appellant had been having sex with her. At the time, appellant was living with AR and her mother. The government introduced evidence of this offense as uncharged misconduct under Mil. R. Evid. 404(b). The evidence was not admitted as propensity evidence under Mil. R. Evid. 413 or 414. Appellant, his wife, and AR all testified that after a brief investigation by civilian authorities, appellant was allowed to return to the home. Shortly thereafter, appellant married AR's mother.

The evidence that appellant was having sex with his stepdaughter was overwhelming. It included the credible testimony of AR, AR's statement to several witnesses, appellant's admissions to several witnesses, DNA evidence, videos of appellant and AR engaged in sexual intercourse and other sexual acts, text messages, text messages with attached nude and semi-nude photos of AR, and testimony from appellant's wife that, on 16 July 2013, she walked in on her husband having sex with her daughter. Ultimately, at trial, appellant testified that he had been having sex with AR–but only after she turned eighteen.

Accordingly, when it came to the offenses at issue, the focus at trial and on appeal is not whether a sexual act occurred, but rather whether it was consensual. As we discuss below, the evidence concerning the six specifications was not equal.

*C. The Military Rule of Evidence 413 Instruction*

Prior to deliberations, the military judge instructed the panel, under certain circumstances, they could consider evidence of one charged offense to find appellant had the propensity to commit the other charged offenses. For all substantive purposes the instruction was the same as the one given in *Hills*.[4] 75 M.J. at 352-53.

As an initial matter, we note that *why* the instruction was given is entirely unclear from the record. The instruction was never litigated one way or the other. The military judge summarized a Rule for Court-Martial [hereinafter R.C.M.] 802 conference where he had discussed the instructions with the parties and provided instructions for the parties to consider overnight. His summary of the R.C.M. 802 conference included two disagreements regarding lesser-included offenses, but did

---

[4] *See* Dep't of Army, Pam. 27-9, Legal Services: Military Judges' Benchbook (1 Jan. 2010).

not mention any concern regarding the proposed Mil. R. Evid. 413 instruction. In fact, his summary of the R.C.M. 802 conference appeared to state, except for the issue of lesser-included offenses, the parties "agreed" with the proposed instructions. Defense counsel at trial stated "I don't object to your recitation of [the] 802 conference." Appellant now asserts that the Mil. R. Evid. 413 instruction was given sua sponte by the military judge. It is also possible that it was requested by the government and not objected to by the defense. The absence of an objection to the instruction deprives us of a developed record one way or the other.[5] However, as we will explain, the distinction is unimportant in this case.

Under these circumstances we would normally test for waiver and forfeiture. (e.g. did appellant either waive the issue when he "agreed" with the proposed instruction or forfeit the issue when he failed to object to the instruction). However, at oral argument, the government agreed with appellant that if the instruction was error, it was plain and obvious error. Given the government's concession, we assume without deciding that the error was plain and obvious. Accordingly, the only issue for us to decide is whether the error was harmless beyond a reasonable doubt.

## LAW AND DISCUSSION

### A. Factual Sufficiency

As an initial matter, we briefly address whether the specifications are factually sufficient. In this case, we believe this inquiry is an important threshold determination.[6]

With regards to *all six* specifications of which the panel convicted appellant, we find the evidence to be factually sufficient. That is, without considering any propensity evidence, we are entirely convinced beyond a reasonable doubt of

---

[5] Mil. R. Evid. 404(b) and 413 both require notice to the defense. However, no notice is required to be provided to the court. Unlike Mil. R. Evid. 412, there is no requirement for a hearing before the evidence is admitted. If there is no objection or litigation concerning the evidence and instructions, it is unlikely that the notice will be included as an appellate exhibit in the record of trial.

[6] If an offense is not factually sufficient, a rehearing may not be authorized. UCMJ art. 66(d). It would be improper, for example, to set aside a specification and authorize a rehearing based upon a *legal* error if the specification was not also *factually* sufficient. Such a result would allow the government to have a rehearing because of a prejudicial legal error that, absent the error, would not have been permitted. Obviously, the government should not benefit from legal error that was adverse to appellant.

appellant's guilt. In making this determination we assess AR to be exceptionally credible. AR's testimony consisted of a candid, thoughtful, and detailed recitation of appellant's offenses. Her testimony was corroborated by other evidence in many instances. Additionally, we assess appellant's testimony to be not credible and unworthy of belief.

This finding also serves as a contrast to our separate consideration below on whether the *Hills* instructional error was harmless beyond a reasonable doubt. We do not believe our personal determination that the accused's guilt was proven beyond a reasonable doubt to be the same as our determination of whether the military judge's instructional error was harmless beyond a reasonable doubt as a matter of law. The issues are different, and we must keep them separate.

### B. Prejudice and the Strength of the Government's Case

In our recent decision in *Guardardo* we outlined several considerations that weighed in favor of finding that the propensity instruction was harmless beyond a reasonable doubt. 75 M.J. at 897-99. In this case, we find only one factor to be controlling–the strength of the evidence.

In assessing the evidence as it relates to the six specifications we find one specification, Specification 1 of Additional Charge I, is unlike Specifications 2 through 6 of Additional Charge I. Specification 1 alleged appellant sexually assaulted his step-daughter on 13 July 2013. As appellant was caught in the act, the evidence against this offense was overwhelming.

First, as discussed above, AR's testimony that she was sexually assaulted was compelling.

Second, appellant's wife, LHM testified to her observations after catching her husband having sexual intercourse with his daughter, to include his exposed and erect penis. She then testified that after she caught appellant having sex, AR had a "dead stare" and only "[came] to" much later. LHM further testified when she asked AR how long this had been going on, AR told her that it had been going on since appellant had married LHM. Appellant's reaction to this was to tell AR "shut up, shut up, let me talk, let me explain, don't say a word." Appellant's explanation was that "you know I had issues, you know I've had problems . . . . I have a sick mind and I need help." LHM testified appellant then stated:

> I'll give you whatever you want, I will give you the power
> of attorney, I'll give you the house, I will give you the
> cars, I'll give you access to my bank account. I will go
> first thing in the morning to JAG and I will give you

5

> whatever you want, just don't call the MPs, you know
> what they do to people like me if I go to jail.

Third, the government introduced evidence that the next morning appellant signed a general power of attorney for his wife.

Fourth, we consider appellant's false exculpatory statements to Master Sergeant (MSG) Atkinson and Criminal Investigation Command (CID) that he had not been having sexual intercourse with his stepdaughter. Master Sergeant Atkinson testified that appellant had explained that he was playing a "game [] called wedgie, where they pull up the pants, up into the crotch" with AR but not having sex. Appellant told a Special Agent from CID that he had been "wrestling around with [AR]" and his wife was angry because he had "pinched [AR's] butt and given her a wedgie" and he had never had sex with AR.

Fifth, we weigh *against* appellant his testimony about this offense. Appellant testified while he had routinely been having sex with his then twenty-two year-old stepdaughter, and he was about to have sex with his twenty-two year old daughter after engaging in wrestling and giving wedgies, he had not yet had sex with AR on this particular occasion. He further stated it was AR who made the sexual advance against him. This was an explanation that perfectly (albeit incredulously) weaved between nearly every piece of evidence. It explained his exposed erection, the videos of him having sex with AR, and his statements to MSG Atkinson and CID.

Finally, we consider the evidence introduced under Mil. R. Evid. 404(b) and the other offenses as they relate to this offense (of course, for purposes other than propensity). We consider, for example, AR's testimony that when she was about nine, prior to joining the Army, appellant had sexual intercourse with her, for the purpose of establishing appellant's intent.

Accordingly, because the evidence was overwhelming, we find that the error caused by the military judge's propensity instruction was harmless beyond a reasonable doubt as to Specification 1 of Additional Charge I.

However, the strength of the evidence as to Specification 1 of Additional Charge I presents a problem as it relates to Specifications 2 through 6 of Additional Charge I. As we noted in *Guardardo*, the danger of propensity is related to the strength of the evidence. 75 M.J. at 898. So, in that case, we found the evidence from which the panel might draw an improper propensity inference to be weak, and therefore less likely to result in harm. Here, in contrast, we have overwhelming evidence as it relates to Specification 1. This presents an *increased likelihood* that the panel members would use the strong evidence as it related to Specification 1 to find appellant's propensity to commit the offenses alleged in Specifications 2 through 6 where the evidence was not as strong.

6

Weighing the strength of the evidence as it relates to Specifications 2 through 6 of Additional Charge I, we find it falls within the interstices of two standards. It is strong enough to convince us of appellant's guilt, but insufficient to convince us that there is no reasonable possibility the improper propensity instruction had no effect on the panel's guilty findings. Accordingly, we set aside the findings as to Specifications 2 through 6 of Additional Charge I.

Our dissenting colleague believes we take the CAAF's opinion in *Hills* too literally. We offer two brief responses.

First, we acknowledge that the CAAF in *United States v. Burton*, 67 M.J. 150 (C.A.A.F. 2009) all but explicitly sanctioned the use of propensity evidence stemming from charged offenses. In that case the court forbade the post-hoc justification of arguing propensity when the government never moved to admit propensity evidence. *Id.* at 153. ("It was trial counsel's improper argument that introduced the issue of propensity, not the evidence. As the Government did not offer the evidence under M.R.E. 413, it did not follow the steps required by M.R.E. 413. Therefore, it may not *a posteriori* justify its closing argument *based on what it might have done.*") (emphasis added). The court also stated that the "Government may not introduce similarities between a charged offense and prior conduct, whether charged *or uncharged*, to show modus operandi or propensity without using a specific exception within our rules of evidence, such as M.R.E. 404 or 413." *Id.* at 152 (emphasis added). Admittedly, the entire reasoning of *Burton* is beside the point if the government was *never* allowed to introduce propensity evidence arising from charged offenses. To be sure, *Burton* was read in many cases to sanction what *Hills* now forbids–the use of propensity evidence based on charged offenses. That was this court's reasoning in *United States v. Barnes*, 74 M.J. 692 (Army Ct. Crim. App. 2015), *pet. denied*, 75 M.J. 27 (C.A.A.F. 2015). However clear we may have thought *Burton* was, we must now read *Burton* in the light of *Hills*. To our eyes *Hills* explicitly forbids what *Burton* tacitly endorsed. *Burton* must yield to *Hills.*

Second, we acknowledge that our resolution of this case creates an inconsistency. Today, we set aside five specifications because of the risk that propensity evidence from one specification (Specification 1 of Additional Charge I) bled over to the remaining specifications. We also authorize a rehearing. If a rehearing occurs, Specification 1 would no longer be "charged." As "uncharged" misconduct, evidence of Specification 1 could be introduced under Mil. R. Evid. 413 to prove appellant's propensity to commit the remaining offenses.[7] In *Hills*, the CAAF specifically exempted from their decision cases where "an accused has

---

[7] We do not mean to presuppose that such evidence *is* admissible at any future retrial or Mil. R. Evid. 413 hearing. We discuss this issue only for purposes of illustrating the *Hills* issue as it is now before us.

pleaded guilty or been found guilty" and that such evidence "can be admitted and considered under M.R.E. 413 to show propensity to commit the sexual assaults to which he pleaded not guilty. . . ." *Hills*, 75 M.J. at 354. In other words, what we find to be constitutional error today, at a rehearing may not be error at all, let alone constitutional error. We recognize this discordance but find it to be unavoidable. Thus, while we find the argument of our dissenting colleague to not be unreasonable, we read *Hills* as requiring exactly this result.

## CONCLUSION

The findings of guilty as to Specifications 2 through 6 of Additional Charge I and the sentence are set aside. The remaining findings of guilty are AFFIRMED. A rehearing on Specifications 2 through 6 of Additional Charge I may be ordered by the same or a different convening authority. The same convening authority, in any event, shall conduct a rehearing on the sentence.

Judge FEBBO concurs.

Senior Judge MULLIGAN, dissenting in part:

As I stated in *United States v. Guardardo*, I continue to believe that this court should read *Hills* narrowly to cover the narrow circumstances contained in that case. 75 M.J. at 908 (Mulligan, J. concurring). This case, if anything, belies the false wisdom in the majority's approach.

Unlike *Hills*, which involved one course of conduct over several hours, appellant's conduct in this case covered multiple sexual acts over approximately five years. AR testified that, except when appellant was deployed, the sexual misconduct occurred several times a week over that period of time. Nonetheless, even if the instruction was error, I do not believe it was harmful.

Throughout the entire record of trial, the concept of "propensity" appears only once–in the instructions. It is never mentioned–even in passing–in opening statement or closing argument. It is never litigated. Consider that *no propensity instruction* was given concerning the *uncharged* evidence that appellant sexually assaulted his daughter prior to joining the Army. The panel acquitted appellant of the rape and carnal knowledge offenses, which indicates they balanced the evidence after receiving the propensity instruction and acquitted him of related sexual charges. While I acknowledge that the government at oral argument conceded the issue of whether appellant forfeited this error at trial, we are still left with a record in which concerns about propensity are fleeting. This would appear to indicate a lack of prejudice.

Compare, for example, this case to *United States v. Barnes*, 74 M.J. 692 (Army Ct. Crim. App. 2015), *pet. denied*, 75 M.J. 27 (C.A.A.F. 2015), where the government specifically argued in rebuttal that the panel should "pay careful attention to the instructions . . . and know that the accused's propensity to commit these offenses . . . ." This court affirmed the findings, specifically sanctioning the use of a propensity instruction for charged offenses. *Id.* at 701. Our superior court, which grants petitions for review based on "good cause shown," under Article 67, UCMJ did not find good cause and denied the petition. As an unpublished decision, of course, that decision has only persuasive authority.

As I see it, there are two distinct issues regarding how this Court should interpret *Hills*. First, there is the issue we decided in *Guardardo* of whether propensity evidence from charged offenses may *ever* be used. This Court decided that case by saying "never." *Id.; But see, Id.* at 908 *(*Mulligan J., dissenting*)*. However, even assuming we got *Guardardo* right, this court never specifically addressed whether our superior court's holding regarding the prejudice analysis in *Hills* is applicable to all cases. The CAAF's prejudice analysis in *Hills* focused on the confusing nature of the instructions. The members in *Hills* were asked to apply differing burdens of proof with regards to the same evidence during the same course of conduct occurring over a few hours. This is not the case before the court today where the appellant is charged with criminal acts that span five years against the same victim whose credibility this court found was "exceptionally credible."

We should not read the unique facts of *Hills* in a manner that dictates an absurd result in a case that is factually distinguishable on so many fronts. *Hills* is a case where propensity had no place. The injection of propensity into *Hills*, where appellant was engaged in one course of conduct over several hours, was confusing beyond measure. Accordingly, the CAAF's test for constitutional error was appropriate.

However, everything about the CAAF's treatment of *Hills* indicates its unusual status. Consider the application of the majority's view to one other CAAF case. In *Hills* the CAAF said the court's resolution of the case was "obvious." 75 M.J. at 353. In *United States v. Burton*, the CAAF appeared to specifically sanction the use of propensity evidence stemming from charged offenses. 67 M.J. 150, 153-54 (C.A.A.F. 2009). If the majority is correct in its interpretation of *Hills,* then what was "obvious" to CAAF in *Hills* passed unnoticed by that same CAAF in *Burton.*

Under the majority's view, the CAAF in *Burton,* and *Barnes* all but specifically sanctioned the use of Mil. R. Evid. 413 evidence for charged offenses, only to then yank the rug out in *Hills.* In *Burton* the court specifically told prosecutors if they wanted to argue propensity stemming from offenses "whether charged *or uncharged*" they needed to first go through the Mil. R. Evid. 413

9

wickets. *Burton*, 67 M.J. at 153 (emphasis added). In *Barnes*, the court was presented head-on whether it was proper to use propensity evidence stemming from a charged case. The majority may be correct. I, however, would read CAAF's line of cases in a consistent fashion. By limiting the reach of *Hills* to its unusual facts, there is no discordance.

Accordingly, I continue to believe, consistent with CAAF precedent and federal courts that have interpreted the matter that *Hills* should be read narrowly. I would limit the CAAF's finding of constitutional error to the narrow facts contained in *Hills*. In a case such as this, where the offenses occurred over the course of years, the confusion contained in the (admittedly) confusing instructions did not amount to constitutional error. Therefore, I would affirm.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court